The Ohio and Mississippi Railway Company

*v.*

Michael Wachter.

*Filed at Mt. Vernon January 20, 1888.*

1. Eminent domain—*damages, present and prospective, involved in condemnation proceedings—as constituting a single cause of action—remedy.* All special damages, present and prospective, to the owner of lands, resulting or to result from the proper construction, maintenance and operating of a railroad, under the laws of this State, constitute, as to such land owner, one single, indivisible cause of action, which may be enforced under the Eminent Domain act, or any other appropriate form of action.

2. Same—*subsequent purchaser—of his rights in respect to such damages as were, or might have been, considered in the proceeding to condemn.* Where such right of action has once accrued by the location and construction of a railroad, and the owner of the land thereby injured or damaged conveys it to another, the latter can maintain no action for any damages he may subsequently sustain, which might have been anticipated and allowed as prospective damages in any suit which his grantor might have brought in his own name.

3. Same—*of damages resulting from causes subsequent to condemnation, as affording a further cause of action.* Notwithstanding the condemnation of land for a railroad, and the payment of the compensation or damages awarded the land owner, the company will be liable to him or his grantee for damages resulting from its negligence, either in the construction, maintaining or operating of its road.

4. So where a railroad company, in constructing its road over a natural water-course, makes and maintains a solid embankment across such stream, with an insufficient culvert or opening to permit the free passage of water, or suffers such opening to be so obstructed as in ordinary floods and freshets to throw the water back and inundate the lands above, it will be liable in damages to the land owner, in an action on the case. In such case, the payment of damages to the owner or his grantor, either in a proceeding to condemn or in an action, will afford no bar to subsequent damages.

5. Same—*taking property not necessary for road.* A railroad company can not take, even by making compensation, any more land than is reasonably necessary for the purposes of its road; and the same principle must be applied to the damaging of property, for to permanently damage it is practically taking it to the extent its uses are impaired, though not a taking in the limited sense in which that word is used in the statute.

6. APPEAL—*certificate of Appellate Court—not a limitation as to questions to be considered.* Where the Appellate Court allows an appeal to this court on account of the importance of the questions involved, it may certify the specific grounds on which the appeal is granted, though not required to do so. But when a case is brought here on such certificate, it will be here for all purposes, and this court will be required to consider such questions as arise upon the record, the same as if the case came to this court in the ordinary way. To ascertain what questions thus arise, this court will look to the pleadings, the rulings of the court and the orders in the case, and not to the certificate of the Appellate Court allowing the appeal.

7. SAME—*sufficiency of the declaration—open to question on appeal or error.* It is a question of law whether a declaration discloses a cause of action which is always open to consideration in a court of review, when it falls within any of the assignments of error.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Messrs. POLLARD & WERNER, for the appellant.

Mr. W. C. KUEFFNER, for the appellee.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This is an appeal from the Appellate Court for the Fourth District, affirming a judgment of the circuit court of St. Clair county in favor of Michael Wachter, the appellee, against the Ohio and Mississippi Railway Company, the appellant herein, for the sum of $600 and costs. The form of the action was *trespass on the case.* The first count charges, "that the plaintiff, at the time of the alleged grievances, was the owner, and in possession, of a certain brick-yard, with certain property situate thereon, in the town of O'Fallon, in St. Clair county, near which the defendant's railroad was operated, and which crossed a natural water-course; that defendant had constructed and did unlawfully maintain a certain solid earth embankment across said water-course, about twenty feet in height, which obstructed the natural flow of the water, and forced it back upon adjoining lands; that defendant had constructed and was

maintaining a culvert through the embankment, which was utterly insufficient to permit the free passage of water which, in ordinary floods and freshets, would naturally flow in said water-course and seek passage through the said culvert; that on or about June 20, 1885, a heavy rain storm set in, and a large quantity of rain-water naturally fell upon the lands adjoining said water-course, and said water naturally was drained and ran into said water-course, and would have escaped and run off without damage to the plaintiff, but for said embankment, but that said water was stopped by said embankment, and owing to the insufficiency and inadequacy of said culvert and opening in said culvert, was prevented from passing off in its natural course, and forced back upon and flooded his brick-yard and property thereon, to his great damage."

The second count is substantially the same as the first, except that the negligence imputed to the defendant is its suffering the culvert to become choked up with obstructions, causing the water to back up and overflow the plaintiff's property. The third count charges that the defendant wrongfully and unlawfully constructed and maintained the levee, without leaving a sufficient opening for the water to pass through the embankment. In other respects it was like the first and second. The defendant interposed the plea of not guilty, and upon this issue alone the cause was tried before the court and a jury, with the result already stated.

No exception was taken on the trial to any ruling of the court upon the admissibility or exclusion of evidence, and while we find exceptions were taken to the court's rulings upon the instructions, and that such rulings were assigned in the Appellate Court for error, we may assume this was done merely *pro forma*, for no objection to the instructions is urged in appellant's argument, or even so much as suggested. Not perceiving any objections ourselves to the instructions of which *the appellant can complain*, no discussion of them is called for, or could well be made.

Upon an examination of the record in the Appellate Court, we find there was a simple affirmance of the judgment of the trial court, without any finding of the facts by that court. In its opinion, however, there were questions,—or, rather, a question,—involved in the case, of sufficient importance to certify the cause to this court, which it has accordingly done. As just indicated, that court has appended to its certificate the specific grounds upon which the appeal was granted. That, however, we regard as merely advisory, for the reason the statute did not require it. Yet in many cases, if not in this, such a statement, though not required as a matter of duty, might subserve a good purpose by directing the attention of this court to the particular features of the case which, in the opinion of that court, were not regarded as free from question. Nevertheless, whenever a case is brought from the Appellate Court to this upon a certificate, it is here, as if brought in the usual way, for all purposes. In either case, this court is required to consider such questions, and such only, as arise upon the record, and which it is by law authorized to determine. To ascertain what questions do thus arise,· we look to the pleadings, the rulings of the court and the orders in the cause, and not to the certificate of the Appellate Court allowing the appeal.

Viewing the present record in this light, it is not clearly perceived that anything remains for this court to do but simply to affirm the judgment, unless it were able to say, as matter of law, that the declaration discloses no cause of action,—this being always a question open to consideration in a court of review, when it falls within any of the assignments of error. While there is no direct claim of this kind made, yet the question that appellant now asks us to consider, and which is the only one discussed in the brief filed by its counsel, seems to assert as much. Upon this view, therefore, it may not be improper to consider it. The question or proposition, as formulated by counsel, is: "The injury caused by the construction

of an insufficient culvert in a railroad embankment is immediate and permanent, giving rise to but one cause of action."

Counsel have cited in support of the proposition the following authorities: *Ottawa Gas Co.* v. *Graham*, 28 Ill. 73; *Illinois Central Railroad Co.* v. *Grabill*, 50 id. 241; *Chicago and Pacific Railroad Co.* v. *Stein*, 75 id. 42; *Toledo, Wabash and Western Railway Co.* v. *Morgan*, 72 id. 155; *Chicago and Alton Railroad Co.* v. *Maher*, 91 id. 312; *Decatur Gas Co.* v. *Howell*, 92 id. 19; *Chicago and Evanston Railroad Co.* v. *Loeb*, 118 id. 203; *Wabash, St. Louis and Pacific Railway Co.* v. *McDougall*, 118 id. 229; *Chicago and Evanston Railroad Co.* v. *McAuley*, 121 id. 160,—none of which, in our judgment, sustain it.

The statement is not accurate as an abstract proposition, and even if it were, it is but in part applicable to facts of the case, and is inconsistent with the theory upon which it was tried by both parties. Considered as a general proposition, it should at least be limited to the case of a railroad built under authority of law and in a reasonably proper and skillful manner, so as to avoid the infliction of all loss and injury not necessarily resulting from thus building and operating the road. The proposition, as formulated, assumes that a railroad company has the right to construct and operate its road just as it pleases, without regard to whether the method adopted is sanctioned by good railroading or not; that it may build indifferent culverts, or none at all, over drains and streams on the line of its road, and by thus disregarding the ordinary rules observed in such cases, inundate and overflow, in time of freshets, large bodies of land and other property, without incurring any other or different liability, except as to extent of damages, than that of a company which, under like circumstances, has constructed its road-bed and culverts in strict conformity with the well recognized and approved methods of railroad building. We do not concur in this view.

The decisions of this court above cited, as we understand them to go to the length of holding that all special damages, present and prospective, to the owners of lands, resulting or to result from properly constructing, maintaining and operating a railroad under the laws of this State, constitute, as to such land owner, one single, indivisible cause of action, which may be enforced under the Eminent Domain act, or any other appropriate form of action. As a corollary of this doctrine, these cases further hold, that where, after such right of action has once accrued, the owner of land thus injured conveys it to another, the latter can maintain no action for any damages he may subsequently sustain, which could have been anticipated and allowed as prospective damages in any suit which his grantor might have brought in his own name. But this court has never held, nor is it prepared to hold, that a railroad company is not liable for damages resulting from its negligence, either in the construction, maintaining or operating its road. To do so would be to introduce an anomaly in the law of this State, and offer a premium for negligence and a willful disregard of duty.

A railroad company can not take, even by making compensation, more land than is reasonably necessary for the purposes of its road. This is universally conceded. The same principle must be applied to the damaging of property, for to permanently damage it is practically taking it to the extent its uses are impaired, though not a taking in the limited sense in which that term is used in our statute. Public health and convenience, as well as the positive law of the State, alike demand that railways leading over natural streams and drains, should, by means of efficient and substantial culverts, or otherwise, be so constructed as to admit the escape of accumulating waters through them, in times of high water as well as low. But experience shows that even these precautions which the law requires to be observed are often not sufficient to entirely protect adjacent property owners; hence the constitution of

the State has expressly provided for compensation in such cases. But the providing of such compensation for unavoidable injuries to property was clearly never intended to license companies to overflow vast bodies of land which might be fully protected by the building and maintaining proper culverts. Now, in a case of this kind, when the company commences operating its road without having built such culverts, or provided some other efficient means for the escape of the water, is it thereby relieved of the duty of doing so altogether? To say this, is to assert that one may discharge a legal duty by utterly disregarding it, which is simply absurd. To maintain an embankment of a road in that condition is not only a violation of a public duty, but is a direct invasion of the private rights of the owners of the lands thus constantly menaced by overflows which could never reach them if the road-bed were properly constructed.

To the suggestion that the company may be compelled to pay for this constant menace and consequent depreciation of the value and use of the land in times of overflow, it is sufficient to say that he is under no obligation to submit to a partial loss which could be avoided by the performance of a legal duty that the company owes to him. It is, in effect, forcing one to sell his property under the forms of law, in the absence of any public necessity justifying it. The remedy is to compel the company to properly construct its road, and until that is done, hold it responsible for all damages resulting from such failure of duty.

There are decisions to the effect, that where, in a case like this, the plaintiff has treated the injury as embracing prospective as well as present damages, and has offered proof in support of such claim, there can be no further recovery. These decisions rest upon the principle of estoppel, and are consequently sound; but no such question arises in this case. Yet it does not follow that because a land owner, under the circumstances suggested, would be estopped from bringing a

second suit, the company would be relieved of the public duty to properly construct and maintain its embankment, and it would therefore continue liable to all persons injured by its failure to do so, except such as might be estopped, in the manner we have stated, from enforcing a claim of that kind.

The judgment will be affirmed.

*Judgment affirmed.*