# THE OHIO AND MISSISSIPPI RAILWAY COMPANY

## v.

# WILLIAM ELLIOTT.

*Railroads—Improper Construction of Embankment—Diversion of Water-Course—Overflow—Action for Damages—Statute of Limitations—Plaintiff's Interest Subsequently Acquired—Variance.*

1. Knowledge at the time one acquires an interest in land of the improper construction of a trestle on an adjoining railroad and the danger

of its diverting a natural watercourse and causing an overflow on his land, can not defeat his right to recover for injuries from such overflow.

2.  Though a railroad company has the prescriptive right to maintain an embankment at a certain height, it can not acquire the prescriptive right to increase its height, unless each increase is acquiesced in by persons interested for the time necessary to create a prescriptive right.

3.  The improper and unlawful construction and maintenance of its roadbed by a railroad company is a continuing breach of duty, and each injury suffered by reason thereof constitutes a new cause of action.

4.  The statute of limitations runs from the date of the injury and not from the time the embankment was improperly constructed.

5.  There is no variance between a declaration charging that the flood causing the injuries was caused by the filling of a trestle, and evidence showing that the flood was caused by the deposit of drift, which deposit was caused by filling the trestle.

[Opinion filed February 25, 1890.]

APPEAL from the Circuit Court of St. Clair County; the Hon. WILLIAM H. SNYDER, Judge, presiding.

This is an action on the case brought by appellee against appellant for damages resulting to crops by so constructing its railroad as to divert and obstruct the natural flow of water and flood appellee's land. The evidence shows a small stream flowing from the highlands, at times of freshets, divided, and a part flowing along the natural channel of the stream while a part of the water passed through a trestle, constructed by appellant about 1854, into a lake. That part of the water which flowed through the trestle, flowed in its natural course, and was, about 1868, obstructed by the filling in of the trestle and constructing an embankment to the level of, and for a road-bed. As a result of the construction of that embankment, the natural flow of the water into the lake was prevented, and the drift carried from the highlands by the waters of the stream was deposited against the embankment on the north side of the same, and raised the surface of the lands until the deposits so left had raised the surface to almost the level of the road-bed. At the time of the construction of the railroad the land on the north and south sides of the road was almost level; but in consequence of the filling

of the trestle the drift deposited by the stream on the north side of the road, has raised the lands on that side of the road until almost level with the road-bed and about eight feet higher than they were before the filling of the trestle, while the level of the lands on the south side of the road had not been raised. The bed of the stream was also correspondingly raised. To prevent the overflow of the stream from passing over the road-bed, James R. Miller testifies "The O. & M. have been raising their track below there right along, and now are filling in—that making it still higher—in order to keep the water from running over their track. They built a dam right along there and rip-rapped their track." He further states that about two years ago they built that dam and put an addition to it about a year ago. The flooding alleged to have caused the damage occurred in June, 1888. The defendant filed pleas of general issue and the statute of limitations of five years. The appellee rented the land on which the crops were flooded with full knowledge of the danger of overflow. A verdict and judgment was entered for appellee for $800 and the appellant brings the record to this court.

Messrs. POLLARD & WERNER, for appellant.

Plaintiff having acquired his interest in the land on which the injured crops were growing, and planted his crops long after the trestle in question had been filled, and the land on the north side of the track filled by the deposits up to the level of the railroad track, can not recover, as he acquired his property subject to this condition of things. Illinois Cent. R. R. Co. v. Allen, 39 Ill. 205; T., W. & W. R. Co. v. Hunter, 50 Ill. 325; Same v. Morgan, 72 Ill. 155; C. & A. R. R. Co. v. Maher, 91 Ill. 312.

The statute of limitations pleaded was a complete bar to these actions. The trestle in question was filled in 1868 or 1870, and the damage was done in 1888, at least eighteen years afterward. The fill was a permanent structure, and became as much a part of the road-bed as any other, and when the deposits accumulated on the north side so as to raise the surface up to the level of the track it became practically

impossible to replace the trestle and restore the old order of things. It was not a case of negligent or imperfect construction of the road, and all actions for injuries caused by such filling should have been brought within five years after the fill was made. Troy v. Chester R. R. Co., 3 Foster (N. H.), 183; approved in C. & G. R. Co. v. McAuley, 121 Ill. 160; Wabash, St. L. & P. R. Co. v. McDougall, 118 Ill. 229; Fowler v. N. H. & N. H. Ry. Co., 112 Mass. 334; Kansas R. R. Co. v. Mihlman, 17 Kas. 225.

The case made by the evidence is not the one stated in the declarations. The declarations allege that the backwater was caused by the filling of the trestle, but the evidence shows that it was caused by deposits which had filled up the ground north of the railroad track. T., W. & W. Ry. Co. v. Morgan, 72 Ill. 155.

Messrs. TURNER & HOLDER, for appellee.

Each overflow caused by the negligence or want of skill of the company creates a new cause of action for damages to the crops or other property of the rightful possessor of the lands overflowed, although the plaintiff acquired his interest after the creation of the obstruction. Carriger v. R. R. Co., 7 Lea (Tenn.), 388; O. & M. Ry. Co. v. Wachter, 23 Ill. App. 415.

The latter case was affirmed in 123 Ill. 440, and is decisive of this case.

It is the continuing duty of a railroad company to so construct and maintain its culverts across the streams obstructed by its embankments as to inflict no injury upon riparian adjacent owners, and each overflow caused by its negligence or unskillfulness in that behalf is an independent cause of action. T., W. & W. Ry. Co. v. Morrison, 71 Ill. 617; J., N. W. & S. E. R. R. Co. v. Cox, 91 Ill. 502; Pierce on Railroads, 202; L. R. & Ft. S. Ry. Co. v. Chapman (39 Ark. 463), 43 Am. 280; L. & N. R. R. Co. v. Hays (11 Lea, 382), 47 Am. 291; Drake v. C., R. I. & P. Ry. Co., 63 Iowa, 302; Gulf, etc., Ry. Co. v. Nelson, 59 Texas, 125; O. & M. Ry. Co. v. Wachter, 123 Ill. 440; Chicago, etc., R. R. Co. v. Benson, 75 Mo. 504.

The owner of land can rightfully do, on his own land, any

The Ohio and Mississippi Ry. Co. v. Elliott.

act that does not interfere with another's rights; and such act is legal. But whenever such act causes injury to another, such owner is liable for the damages so caused, and the cause of such action accrues at the time of such damage and not before. If the cause of action be not the doing of the thing, but the resulting of damage only, the period of limitation is to be computed from the time when the plaintiff sustained the injury. Valley Ry. Co. v. Franz, 43 Ohio St. 623.

Appellees warned appellant that the embankment complained of would certainly be the cause of damage, but they had no right of action until the damage was actually sustained. McConnel v. Kibbe, 29 Ill. 485; Angell an Lim., 325; Wood on Limitation of Actions, p. 371, Sec. 180.

And in discussing a similar question the Supreme Court of Iowa say: "In this case no part of the land was taken, nor was any change wrought upon it. The only detriment which the land sustains is its liability to overflow from unusually heavy rains. The true measure of damages is the injury which the land and other property of the plaintiff sustains from the successive overflows when they occur." Van Pelt v. City of Davenport, 42 Iowa, 314.

PHILLIPS, J. Appellant claims that appellee can not recover, he having acquired his interest in the land with full knowledge of the liability to overflow, and having planted his crops with that knowledge. For that injury, caused by the flooding of lands by the negligence or want of skill of the railroad company in constructing, maintaining or operating its road, it can not be held that proceedings by condemnation authorized an improper construction, maintaining or operation of the road. Neither can it be held, where damage results from such improper construction, maintaining or operation of the road, that a grantee taking the land where the road is so improperly constructed, maintained or operated, with full knowledge of such defects, may not recover for an injury consequent on such improper construction and maintenance. O. & M. Ry. Co. v. Wachter, 123 Ill. 440.

In this case, the construction of the embankment in 1868,

so as to fill the trestle with a solid embankment that prevented the flow of the water, where, in times of high water, it had formerly flowed, was an obstruction to the natural flow of the water; and when, in consequence of that obstruction, the sur- face of the land on the north side of the road, and the bed of the stream, were raised until the level of the land was almost equal to the level of the road-bed, that, to prevent the water from again flowing in the direction it did before the filling of the trestle, the railroad company raised its road-bed and con- structed an embankment to prevent that natural flow, is such an injury, that where the same caused the flooding of appellee's land, he may have his action therefor. The statute of limita- tions did not bar this action.

The evidence shows that although the trestle was filled and a solid embankment made about 1868, and the injury sued for was done in 1888, yet within five years of the time the injury complained of resulted, the embankment was raised and a dam constructed to prevent the water from passing in the direction it formerly and naturally flowed in, flowing over the road-bed where the trestle had formerly been. The deposits on the north side of the road having raised the land on that side until it was almost as high as the road-bed, in time of high water the water would flow over the road until again obstructed by increasing the height of the bed and the erection of a dam along the same to prevent that flow of the water.

There was here no prescriptive right. The prescriptive right of appellant to maintain the embankment at existing height is a right that can not be extended by the act of appel- lant unless acquiesced in for a necessary time, and does not authorize the railroad company to increase the height of its embankment from time to time to purposely obstruct the natural flow of the water. Its prescriptive right is a right to maintain its embankment as originally constructed and on the presumption of a grant to flood lands to the extent that lands would be flooded by so maintaining the embankment at such original height. There is no right to increase the height of the embankment to prevent the natural flow of the water in

a natural direction, and claim such increased height as a prescriptive right, until the full term has run from the time of such increased height to give a prescriptive right.    By increasing the height of the embankment within two years there was no prescriptive right to flow appellee's land.    By increasing the height of the road-bed and constructing the dam the water on appellee's land was increased in quantity. To the extent the flowage was so increased it was unauthorized and was an injury for which appellee was entitled to recover, not barred by the statute of limitations.

But to place the question as to the statute of limitations on another principle of law, it was said by the Supreme Court of Illinois, in the O. & M. Ry. Co. v. Wachter, *supra:* " The proposition as formulated is :   ' The injury caused by the construction of an insufficient culvert in a railroad embankment is immediate and permanent, giving rise to but one cause of action.'    *    *    *    The statement is not accurate as an abstract proposition, and even if it were, it is but in part applicable to the facts of the case, and is inconsistent with the theory upon which it was tried by both parties; considered as a general proposition it should at least be limited to the case of a railroad, built under authority of law, and in a reasonably proper and skillful manner, so as to avoid the infliction of all loss and injury not necessarily resulting from thus building and operating the road.    The proposition as formulated, assumes that a railroad company has the right to construct and operate its road just as it pleases, without regard to whether the method adopted is sanctioned by good railroading or not; that it may build indifferent culverts or none at all over drains and streams on the line of its road, and by thus disregarding the ordinary rules observed in such cases, inundate and overflow in times of freshets large bodies of land and other property without incurring any other or different liability, except as to extent of damage, than of a company which, under like circumstances, has constructed its road-bed and culverts in street in conformity with the well recognized and approved methods of railroad building.    We do not concur in this view."    That case is conclusive of the question here presented by the stat-

ute of limitations, as here a well defined place, where the water naturally flowed in times of high water, is obstructed, with no outlet left for the water to escape. It can not be held, therefore, that the facts show a state of case barred by the statute of limitations. The appellee was not to assume that the road so improperly constructed would be maintained in that manner.

It is further insisted that the case made by the evidence is not the one stated in the declaration, as that the backwater was not caused by filling the trestle, but by deposits which had filled and raised the ground north of the railroad track. We fail to see how the distinction may be taken between the flooding being caused by the filling of the trestle, and the filling of the trestle causing drift to be deposited, which raised the level of the land on the north of the road, thereby causing the flooding of the land. The filling of the trestle was the primary cause of the flowage.

The jury was properly instructed and the special findings are not inconsistent with the general verdict.

The judgment is affirmed.

*Judgment affirmed.*