# THE OHIO & MISSISSIPPI RAILWAY COMPANY

## v.

## GOTTFRIED NUETZEL.

*Railroads — Negligence — Flowage of Crops — Solid Embankment — Limitations — Evidence — Instructions.*

1. Expert testimony is inadmissible in a controversy where the relation of certain facts and their probable result can be determined without special skill or study.

2. The issue in a given case being as to whether a railroad embankment caused an obstruction to the flow of water in consequence of which certain

O. & M. Ry. Co. v. Nuetzel.

lands of the party bringing the action were flooded, one of his witnesses should not be asked upon cross-examination as to his opinion whether such lands would have been flooded if there had been no deposit of *debris* brought down by a certain stream, such question being irrelevant and improper cross-examination.

3. When a crop planted is not up when destroyed, the value thereof must be estimated upon the basis of rental value and cost of seed and labor; when the crop is more or less matured so that the product can be fairly determined, the value of the crop when destroyed constitutes the measure of damages.

4. In the case presented, this court holds certain questions sought to be asked touching rental value and cost of labor in raising crops, proper as a matter of cross-examination, in order to test the fairness and determine the basis on which the witness fixed the value of the crop destroyed, but that the sustaining of the objections thereto was not such error as would warrant a reversal.

5. An instruction is erroneous which sets forth that there can be no recovery where a railroad embankment, which has been treated as a permanent obstruction by the parties to a given suit, was created more than five years previous to the institution thereof, the evidence showing the same to have been increased in height during such period.

6. It is proper to refuse an instruction, the substance of which is contained in one given.

7. An instruction not based upon the evidence should be refused.

8. The right of an owner of land bounding an inland stream to confine the waters thereof to the original channel, must be exercised with reference to permitting the flow to continue, and not an absolute obstruction thereof.

9. This court holds as proper the refusal of certain instructions asked on behalf of the defendant, the same setting forth in substance, first, that if it appears that the making of a certain embankment was warranted and necessary, the same being done carefully and in a workmanlike manner, actions for injuries caused thereby must be instituted within five years, and second, that a purchaser of land so injured takes the same in its depreciated condition, and without any right of action, they ignoring the question as to whether the work was done in accordance with skillful engineering and proper construction with reference to the rights of adjacent owners.

10. A railroad company erecting a solid embankment over a watercourse, can not escape liability for injury caused by flowage of adjacent lands upon the plea that the same resulted from an extraordinary flood; a proper outlet should be provided in such cases.

11. The rule of law in this State touching regular watercourses and surface water is the same.

## [Opinion filed February 26, 1892.]

APPEAL from the Circuit Court of St. Clair County; the Hon. B. R. BURROUGHS, Judge, presiding.

Messrs. POLLARD & WERNER and RAMSEY, MAXWELL & RAMSEY, for appellant.

Messrs. TURNER & HOLDER, for appellee.

PHILLIPS, P. J.   This is an action on the case to recover for damage for crops by reason of an overflow alleged to have been caused by constructing and maintaining a solid railroad embankment across one branch of a natural watercourse, and from time to time raising and increasing in height a solid earth embankment across one branch of said watercourse. The pleas were not guilty, and the statute of limitations of five years.

The Ohio & Mississippi Railroad was built through St. Clair County about the year 1855. From east to west it passes through the village of Caseyville, and about one-half mile west thereof reaches low ground, and is built thence to East St. Louis, on an embankment of an average height of about ten feet across the American Bottoms. In the original construction of this road there was a trestle where the low lands commence, at a point west of Caseyville about one mile. This trestle was partially filled up about 1868, and a solid embankment constructed where the trestle was. In 1869 or 1870 the Vandalia road was constructed for a mile or two at this point nearly parallel with the road of appellant and about three hundred yards north of appellant's road. The Vandalia road was built on an embankment of about the same height as that on which appellant's road was built. These two embankments were about ten feet above the level of adjoining lands. Little Canteen Creek, which came down from the highlands at a point about opposite where the trestle was originally constructed in appellant's road, forked, one branch running north, over which branch the Vandalia road was constructed on a trestle, and about three-quarters of a mile from that point that branch emptied into Big Canteen Creek, and the other branch ran south through the trestle originally built in appellant's road into a lake. At the time the trestle in defendant's road was filled up, the lands on the highlands along Little Canteen

Creek were uncleared, but subsequently were placed in cultivation, and soil and *debris* of various kinds began to be deposited where that creek came onto the low lands eastwardly toward Caseyville. From year to year these deposits increased until the land between these two railroads from the bluffs eastwardly toward Caseyville was filled up to the level of the embankments of the two roads, and from time to time since 1885 the road-bed has been raised to prevent the water from flowing over the same. There has been a corresponding rise in the bed of the creek. In times of floods the water obstructed from flowing in its former channel where the trestle had originally been, floods the land on the north of the road above that trestle by the course of the stream and below where the trestle had been. In June, 1888, plaintiff's lands from this cause were flooded, and caused the damage complained of. These facts were substantially shown by plaintiff, and the defendant offered expert testimony to show whether the closing of the trestle was the cause of the accumulation of soil and *debris* to cause the filling up of the land above the trestle. This testimony was objected to by the plaintiff and the objection sustained, and this ruling of the court is assigned as error.

It is urged this is a scientific question in which expert testimony is competent to show that the deposits would have accumulated just the same had the trestle been open, and that the effect of closing the trestle was to confine the waters to the main channel and to tend to carry off rather than to precipitate the deposits, and that the accumulation of deposits was the cause of the overflow. The issue as made by the pleading in this case was as to whether the defendant had constructed and maintained an embankment across one branch of a natural watercourse so as to prevent the flow of water through the same, and in consequence of which plaintiff's lands were flooded. The offer to show that whether the trestle was filled up or not there would still have been deposits that would have raised the surface of the land, could not enlighten the jury as to whether a solid embankment across the branch of the natural watercourse obstructed the flow of water, nor was the offer to show that the accumulation of

deposits was the cause of the overflow admissible under the issue. It may be that the deposits brought from higher up on the stream not being allowed to pass through the trestle would be precipitated and gradually raise the surface of the land to cause an obstruction by the deposits. We said in O. & Mc. Ry. Co. v. Elliott, 34 Ill. App. 592, "We fail to see how the distinction may be taken between the flooding being caused by the filling of the trestle, and the filling of the trestle causing drift to be deposited which raised the level of the land on the north of the road, thereby causing the flooding of land." If within a distance of half or three-quarters of a mile a solid embankment across a stream causes deposits to be precipitated so that where that trestle was formerly, the water is eight or ten feet above the level of where it passed under that trestle, or if deposits are precipitated which raise the surface of the land eight or ten feet along where the trestle was formerly, in either event, to seek to show the cause of precipitation of deposits does not tend to enlighten the jury as to whether the embankment obstructed the flow of water; the facts appearing in the record are that the level of the land north of the road is from eight to ten feet higher than south of the road and where that branch formerly ran. It further appears that at that point the stream has lost all semblance of banks by reason of the deposits. If it had been permitted to pass under the trestle as formerly, it would have gone under the trestle at substantially its former level, or would have carried these deposits under and beyond the trestle, or would have been pouring over a fall eight or ten feet high, and the statement of that proposition is sufficient to show that deposits thus carried by a stream and the effect thereon of the construction of a dam across the same is one not to be determined as a scientific question, but the facts to be shown and the jury to find the effect. The relation of the facts and their probable result can be determined without special skill or study; in such case expert testimony is inadmissible. It is urged that the court erred in sustaining the objection of plaintiff to the following question asked of one of appellee's witnesses on cross-examination: "Then in your opinion would not the land of plaintiff have been covered with water if there had

been no deposits there?" The issue was as to whether the embankment caused an obstruction to the flow of water, in consequence of which plaintiff's land was flooded; and the opinion of the witness as to its relative condition with reference to, with or without deposits, was not relevant or a proper cross-examination, nor was the opinion of the witness admissible on a hypothetical case, under the facts appearing on his examination in chief. It is urged that the court erred in sustaining objections to questions on cross-examination as to the rental value of the land and the cost of raising the crops up to the stage of maturity at the time at which they were destroyed. The examination in chief was to determine the damage by estimating the value of the crops destroyed. When the crop planted is not up, there is no means of estimating the value of a crop but on the basis of rental value and cost of seed and labor, and in such cases the questions on cross-examination were the only mode of determining damage. Where the crop is more or less matured so that the product can be fairly determined, the value of the crop at the time of its destruction would be the true rule. K. & S. R. R. Co. v. Horan, 17 Ill. App. 650; C. & R. I. R. R. Co. v. Ward, 16 Ill. 522. As a matter of cross-examination, however, the questions were proper to test the fairness and determine the basis on which the witness fixed the value of the crop destroyed. But the sustaining the objections to that evidence is not error for which we ought to reverse this case. It is assigned as error, the refusal of certain instructions asked by the defendant. No point is made in argument on the refusal of the first instruction, which is as follows:

" The court instructs the jury that if the obstruction complained of was of a permanent character, and that permanent injury has ensued therefrom which could not be remedied, and that such obstruction has been treated as permanent by the parties hereto, then if such obstruction was created by the defendant more than five years prior to the institution of this action, all claims for damage on account of such obstruction are barred by the statute of limitation, and your verdict must be for the defendant."

That instruction is in conflict with the rule as declared in the Wachter case, 123 Ill. 440, and under the facts in this case, showing the raising of the embankment from time to time within five years of bringing suit, the same question is presented as was presented in O. & M. Ry. Co. v. Elliott, 34 Ill. App. 589. It was not error to refuse that instruction.

The second refused instruction is:

" The court instructs the jury that if the damage sustained by the plaintiff for which recovery is herein sought, was not the direct result of the acts of the defendant complained of, as alleged in the declaration, and that such acts were not the efficient or adequate cause thereof, but that such damage resulted from a variety of other causes, though combining with such acts to produce the result complained of, but without the operation of which causes defendant's acts complained of had not been sufficient to produce such results, then no recovery can be had herein and your verdict must be for the defendant."

The principle announced in this instruction, so far as it states a correct proposition, is embraced in the second instruction given for the defendant at its request; the instruction given is:

" The court instructs the jury that if the damage to plaintiff's property complained of, resulted from the gradual deposit of sediment, earth and other materials brought down by the creek in question during a long course of years, and such deposits at the place in question were not materially increased or hastened by the acts of defendant, of which complaint is made in the declaration, and would have recurred notwithstanding such acts, then no recovery can be had herein, and your verdict must be for defendant."

If other causes combined with defendant's acts to produce the results, but without the operation of which defendant's acts had not been sufficient to cause the same, no recovery could be had; still, if defendant's acts were the cause of producing certain other results, the combined operation of which was the damage alleged, then the defendant would be liable; and the second instruction refused would have been liable to mislead the jury. It was not error to refuse that instruction.

The third refused instruction is:

"The court instructs the jury that the owner of land bounding on inland streams may repair and restore the banks and construct a levee on his land, so long as his operation tends only to confine the waters within their original channel, and by so doing they are not responsible for any damage which may ensue to neighboring proprietors thereby."

There was before the jury no question of protection or restoration of the banks of an inland stream; and the right to confine waters to their original channel must be exercised with reference to permitting the flow to continue, and not an absolute obstruction of that flow. It was not error to refuse that instruction.

The fourth refused instruction:

"The court instructs the jury that if it appears from the evidence that the damage sustained by the plaintiff was not the direct result of the act of defendant complained of as alleged in the declaration, then no recovery can be had herein and your verdict must be for the defendant."

While the instruction states a correct proposition, yet the first instruction given for defendant at his request was:

"The court instructs the jury that no recovery can be had herein unless the acts of the defendant complained of constitute the proximate cause of the injury complained of, and you are further instructed that the proximate cause of an injury is that but for which the injury would not have occurred; and the burden is upon the plaintiff to prove by a preponderance of the evidence the material allegations of his declaration."

All that was embraced in the fourth refused instruction is stated in the first instruction given. It was not error to refuse that instruction.

The fifth and sixth refused instructions are:

"The court instructs the jury that if it appears from the evidence that the filling up of the trestle was warranted and necessary for the safe construction of defendant's railway and was done carefully and in a workmanlike manner, then for any injuries coming therefrom to adjoining proprietors a right of action for damages sustained accrued at the time such filling up took place, and an action therefor could be instituted at any time during five years next thereafter."

"The court instructs the jury that if it appears from the evidence that the filling up of the trestle in question was a rightful and necessary act for the maintenance of defendant's railroad then the damage to plaintiff's land was immediate and complete at such time, and if he acquired such land thereafter he took it as he found it in its depreciated condition, and he has no right of action against the defendant on account of such filling."

These instructions ignore the question as to whether the filling of the trestle was in accordance with skillful engineering and a proper construction of the road, having reference to the rights of adjacent owners, and are, like the first refused instruction, in conflict with what is said in the Wachter case and the Elliott case, *supra*. It was not error to refuse the fifth and sixth instructions.

The seventh refused instruction is:

"The court further instructs the jury that if they find from the evidence that the damage to plaintiff's crop was caused by an extraordinary flood, then defendant is not liable."

In the case of the O. & M. Ry. Co. v. Ramey, 39 Ill. App. 409, where the same obstruction and the same flood was involved as here, we said:

"It might be conceded an extraordinary rainfall of June 16, 1888, directly damaged plaintiff by overflowing and destroying his crops. And yet, but for the negligence of appellant in maintaining a solid embankment unprovided with suitable and proper outlets or culverts for the passage of the water in its natural course when heavy rain occurred, the water of June 16th might have flowed off and not backed up and overflowed plaintiff's crops." The P. Ft. W. & C. Ry. Co. v. Gillehand, 56 Pa. St. 445; Town of China v. Southwick, 12 Me. 238; Gray v. Harris, 107 Mass. 492. It was not error to refuse the seventh instruction.

The eighth refused instruction is as follows:

"The court further instructs the jury that if they believe from the evidence in the case that the overflow which caused the damage to plaintiff's crops was caused by the

deposits of sediment between defendant's and the Vandalia railroad, and that said deposits were caused by the road-beds of said railroad running along as the evidence shows them to run, and that said deposits would have been made as they now are, or to such an extent as to have caused the water to flow over plaintiff's land and damage his crops as testified to, if the trestle mentioned by the witnesses in the defendant's road had been left open, then they should find for the defendant."

The instruction was properly refused, as the third instruction given for defendant is another form of stating the same proposition.

The third instruction given for defendant is as follows:

" The court further instructs the jury that if they believe from the evidence that at the time of filling of the trestle in defendant's road there was no sediment coming down from the bluffs, and that after filling said trestle, in consequence of cultivating the land on the bluffs and the opening of mines above the land in question, sediment began to come down the Little Canteen Creek and settle between the road-beds of the defendant and the Vandalia roads, and that said deposits or sediment would have formed in the same manner if the said trestle had been left open, then they should find for the defendant."

The ninth refused instruction is as follows:

" The court further instructs the jury that the plaintiff in this case sues to recover damages for the obstruction of a natural watercourse; that a natural watercourse is a stream having a channel with defined banks, and that a depression in the surface of the ground where water runs only in high water, or ordinary high water, over the surface merely, without breaking the soil, is not a natural watercourse within the meaning of the law; and if the jury believe from the evidence in this case that from the main channel or north branch of Little Canteen Creek, as mentioned in the evidence, down to and below the old trestle in the defendant's road as testified to, the water flowed only occasionally and then only on the surface of the ground along a depression without any defined channel with defined banks, they should find a verdict for the defendant."

By reference to the declaration it will be seen that the allegations are that the appellant had constructed and unlawfully maintained, and from time to time had raised and increased in height to the height of fifteen feet, a solid earth embankment along the bottom lands, and across one branch of a natural watercourse; that the said embankment then and there obstructed the natural flow of said water, and forced same back upon adjoining lands; that plaintiff was in possession of, and cultivated land near said watercourse, and had crops upon same; that a heavy storm set in and a large quantity of water naturally fell upon the lands adjoining said watercourse; that said water naturally was drained and ran into said watercourse and would have escaped and run off without damage to the plaintiff but for said embankment; that said embankment stopped and prevented the water from passing off as it otherwise naturally would. The entire evidence in the record shows this obstruction to have been of a branch of a watercourse that had formerly a course through which water ran in time of freshets, so certain, that it was a substantial part of the watercourse. The effect of the obstruction caused its banks to be destroyed by the accumulation of deposits; and whether it was water in a well defined course or surface water which accumulated and ran in a certain course, the rule in this State is the same for one as in the other. The instruction was not correct, and it was not error to refuse it. That the facts appearing in this record are sufficient to sustain a verdict has been before this court in O. & M. Ry. Co. v. Singletary, 34 Ill. App. 425; O. & M. Ry. Co. v. Elliott, 34 Ill. App. 589; O. & M. Ry. Co. v. Ramey, 39 Ill. App. 409; O. & M. Ry. Co. v. Thillman, submitted at the August term, 1890; in which cases the judgments were affirmed. We find no reversible error in this record.

The judgment is affirmed.

*Judgment affirmed.*