### Sanitary District of Chicago v. James Ray.

1. CONDEMNATION—*Damages Awarded Not Conclusive as to Further Damages.*—After the condemnation of land for the drainage canal, and the payment of the damages awarded the land owner, the Sanitary District will still be liable for damages resulting from its negligence, either in the construction or operation of its canal.

2. SANITARY DISTRICT—*Its Continuing Duty.*—The Sanitary District is under a continuing duty to obviate defects in the construction of its channel; and when it diverts water from its natural channel to a new one, to so construct the new channel as to carry the water and prevent its overflow to lands which it did not reach before its failure to do so, renders the imperfect construction a continued nuisance for which successive suits can be maintained.

**Action in Case.**—Damages to crops by overflow of water.   Appeal from the Circuit Court of Will County; the Hon. ROBERT W. HILSCHER, Judge, presiding.   Heard in this court at the May term, 1899.   Affirmed. Opinion filed October 12, 1899.

HALEY & O'DONNELL, attorneys for appellant; CHAS. C. GILBERT, of counsel.

REYNOLDS & PURKHISER, attorneys for appellee.

MR. PRESIDING JUSTICE CRABTREE delivered the opinion of the court.

This was an action on the case by appellee against appellant, to recover damages for injury to his crops, grass, hay and pasture, on premises described as the northwest half of the north half of the northwest quarter of section 25, town 37, range 10, in Will county, which he occupied as tenant of his mother, Mrs. Johanna Ray. Mrs. Ray owned a life estate in the land, and her children, including appellee, were the owners of the remainder in fee. The injury complained of was caused by the overflow of the Desplaines river, after the course of the same had been changed by appellant. In 1892 the Sanitary District commenced condemnation proceedings against the owners of the land, Mrs. Ray and her children, including appellee, in which the southeast half of the north half of the northwest quarter of said section 25 was condemned for the purposes and uses of said district. The northwest half, the land now in controversy, was not included in the proceedings, and appellant therefore acquired no rights therein. This land is situated on the northwest side of the Desplaines valley, and at this point the river ran in a crooked and winding course through said valley. The Sanitary District located its main channel on the southeast side of the land condemned and erected a high embankment about the center of its right of way to keep the river out. It also dug a new channel for the purpose of straightening the river on the northwest side of the valley, which new channel was nineteen miles long, and was called the " river diversion." About the time this new channel was finished, in the spring of 1893, appellee, one of the reversioners, rented said northwest half from his mother, for one year. The evidence shows the land was valuable for grazing and meadow purposes. During times of high water, in 1893, the land was flooded, sometimes to the depth of one and one-half feet to two feet, doing serious damage to the grass, hay and pasture.

Appellee again rented the land in the spring of 1894, also in 1895 and 1896, and each year there was an overflow of water from the new river diversion, and appellee suffered like damage in each of the years named as in 1893. Appellee brought this suit to recover such damages. As a defense appellant pleaded the condemnation proceedings, and insisted that the damages claimed by the plaintiff were assessed in those proceedings. There was a trial by jury and appellee had a verdict and judgment for $320, and appellant prosecutes this appeal.

It is argued and insisted by counsel for appellant in this court, that appellee was not entitled to recover, because :

1. The condemnation proceedings settled the damages and barred any further recovery.

2. That the injury was permanent, and that only one suit could be maintained for the recovery of damages consequent upon the change of the river for the purposes of the Sanitary District.

3. That after the damages suffered during the first year, 1893, appellee must be presumed to have known of the liability to overflow, and rented the land at less than it would be worth but for such liability to damage from overflow.

So far as the first point is concerned, we are of opinion the condemnation proceedings did not settle the damages complained of in this suit. The petition only sought to condemn what is designated as the southeast half of the north half of northwest quarter of section 25 for right of way for the drainage canal, and the adjoining land was not brought into the case, either by cross-petition or otherwise. Even if it should be held that such condemnation proceedings settle the damages to other lands of the same owners, not taken (which we need not now decide), it certainly would only be such damages as arise from a proper construction of the work. Notwithstanding the condemnation of land for a railroad, and the payment of the compensation or damages awarded the land owner, the company will be liable to him or his grantee for damages resulting from its negligence, either in the construction, maintaining or operating its road. (O. & M. R. R. Co. v. Wachter, 123 Ill. 440.)

Only damages for unavoidable injury can be anticipated and allowed for in a condemnation proceeding. On the theory and presumption that in changing the course of the river, the new channel would be so constructed as to carry all the water which had formerly passed over the old bed, without overflow, damages for overflow could not reasonably be anticipated. The owners of the land had the right to rely on such theory and presumption, because it was clearly the duty of appellant to so construct the new channel.

The second and third points made by appellant, may be considered together, and we may premise by saying, we think the evidence clearly shows that the construction of the river diversion and the new channel, was imperfectly and negligently performed. It was the duty of the appellant, when it diverted the water from its natural channel to a new one, to so construct the new channel, as to depth, width and capacity, as to carry the water and prevent its overflow to lands which it did not reach before the change was made. From the evidence it appears that a deeper and wider channel would have prevented the injury from overflow. The Sanitary District was under a continuing duty to obviate the defect, and we think its failure to do so rendered the imperfect construction a continuing nuisance for which successive suits could be maintained. Under the circumstances appearing in this case, appellee was not bound to assume that the wall and river diversion would be a permanent construction. (C., B. & Q. R. R. Co. v. Schaffer, 124 Ill. 120.)

Appellee could not maintain suit for permanent damages to the land, and as we hold they were not settled in the condemnation proceedings, he has a right to bring this action for the damages sustained.

It is true there is a want of harmony in the decisions of courts as to cases of this character, upon the question as to whether successive suits may be brought for each new injury and damage, or whether the party is confined to one single recovery. Authorities cited by appellant give the

one view, and those cited by appellee give the other.  After a careful examination of both lines of authorities, we have arrived at the conclusion that the case at bar belongs to that class in which successive suits may be brought for each recurring injury arising from the improper construction and maintenance of the river diversion, which may be regarded as a nuisance.  Any other rule would make the first suit a practical condemnation of the land, in a proceeding where the value of the land itself could not be shown. This would certainly not be a fair way to condemn land for a public use.

The statute under which appellant was organized as a Sanitary District specifically provides that it shall be liable for all damages to real estate which shall be overflowed or damaged by reason of the construction, enlargement or use of any channel, ditch, drain, outlet or other improvement, under the provisions of the act.  (Sanitary Dist. Act, 19.) We think the case at bar comes within the provisions of this statute.  To so hold is clearly just and right.  Appellant should either have condemned the property and paid for it, or have so constructed its work as to avoid doing damage to the owners and occupiers thereof.

It is insisted by counsel for appellant that there is no proof of improper construction of the new channel or river diversion.  The proof is, however, that land which never overflowed before the change was made, did overflow afterward, and has done so each year since, up to the time this suit was commenced.  We think this is a fact from which the jury might well find there was improper construction. Had the new channel been of sufficient capacity to carry the water theretofore flowing in the old river bed, there would have been no more overflow after the diversion than before. On this point we think the jury were not without evidence upon which to base their verdict.

We think there was no error in the action of the court as to the allowance of attorney's fees.  (Sanitary Dist. v. Bernstein, 175 Ill. 215.)

Finding no error in the record, the judgment will be affirmed.