## THE ILLINOIS CENTRAL RAILROAD COMPANY

*v.*

## CATHARINE GRABILL.

| 50 | 241 |
|----|-----|
| 123 | 444 |
| 50 | 241 |
| 131 | 303 |
| 50 | 211 |
| 134 | 292 |
| 50 | 241 |
| 164 | 236 |
| 64a | 154 |
| 50 | 241 |
| 73a | 626 |
| 50 | 241 |
| 195 | ¹464 |
| 50 | 241 |
| 204 | ⁵411 |
| 50 | 241 |
| 114a | ²227 |

1.  NUISANCE—*liability of a railroad company.*  The maxim, " use your own property, so as not to injure another," is quite as applicable to a railroad corporation

16—50TH ILL.

as to individuals, except so far as the law creating it may have granted to it immunity, and a recovery can and should be had for such damages as arise out of the careless or negligent acts of a railroad company in regard to any usual and necessary appurtenance to their road.

2.   So, where a railroad company erected cattle pens upon their right of way, for purposes of shipping, they should exercise such a supervision over them as will insure the cleanliness of the pens, so that they will not become generators of noxious and unwholesome gases, depriving residents in their vicinity of the comfortable use and enjoyment of their property, and if, by reason of negligence and carelessness, in respect to such pens, they are suffered to become a nuisance, rendering the homes of those in the vicinity uncomfortable and unwholesome, the company must respond in damages for the injury thus occasioned.

3.   But it seems, annoyances caused by the shouting and noises made by those having charge of stock placed in such pens, could not properly be regarded as an element of damages in an action against the railroad company—such persons not being in a position to be controlled by the company or their agents, nor being supposed to be encouraged by them.

4.   MEASURE OF DAMAGES—*in such cases.*   In estimating the damages resulting from a nuisance of the character mentioned, it is proper to consider the depreciation in the value of the plaintiff's property, occasioned thereby, and in addition to that, the injury and annoyance to the plaintiff while occupying the premises.

5.   FORMER RECOVERY—*whether a bar.*   And, it seems, if a recovery in such case is based upon the deterioration in the value of the plaintiff's property, such recovery would be a bar to any further prosecution for the same cause; but if a recovery be had for the annoyance merely, and for rendering the atmosphere unwholesome, then a similar recovery may be had at every term of the court, so long as the nuisance continues.


APPEAL from the Circuit Court of Ford county; the Hon. A. J. GALLAGHER, Judge, presiding.


The facts in this case are fully presented in the opinion of the court.


Messrs. WOOD & LONG, for the appellants.


Messrs. COLER & SMITH, for the appellee.

Mr. Chief Justice Breese delivered the opinion of the Court:

This was an action on the case, brought to the Champaign Circuit Court, by Catharine Grabill, against the Illinois Central Railroad Company, to recover damages for the disturbance of her enjoyment of certain premises owned and occupied by her in the city of Urbana, caused by the negligent, careless and improper manner in which the defendants kept and maintained a certain cattle pen, which they had erected near her premises—they permitting dead carcasses of cattle and hogs to remain in it until they had become rotten and putrid, and suffering filth to accumulate in it and remain an unnecessary length of time, by which, noxious and poisonous smells and stenches were generated, to her great discomfort and inconvenience, and rendering her premises unwholesome and uninhabitable; and further, by suffering pools of foul and stinking water to stand in and about the pen, producing noxious vapors, spreading to her premises, and greatly injuring her in the enjoyment of them.

The venue in the case was changed to the county of Ford, where a trial was had by jury, resulting in a verdict for the plaintiff of $650 in damages. A motion for a new trial was made by defendants and overruled, and judgment rendered on the verdict.

To reverse this judgment, the defendants appeal to this court.

Appellants make two principal points, the first being, that the judgment cannot stand upon any evidence contained in the record, for the reason that appellants, in the use of this cattle pen, were following their legitimate and lawful business, and that the annoyances and injuries of which complaint is made, are only such as individuals are frequently obliged to suffer, without redress, being, as they are, of minor importance compared to the general good which springs from the cause of which the plaintiff complains.

There is no complaint in the declaration, of annoyance by the running of engines, the escape of steam or otherwise, near her premises. Such consequences of the construction and use of railroads must be borne by all living near them, without complaint and without hope of redress, for they are inseparable from the purposes and objects of such structures. But that a recovery can and should be had for such damages as arise out of the careless or negligent acts of a railroad company in regard to any usual and necessary appurtenance to their road, cannot be denied. Like an individual, such companies are responsible in damages for specific acts of wrong. The maxim, "use your own property, so as not to injure another," is quite as applicable to corporations of this character as to individuals, except so far as the law creating them may have granted to them immunity.

Appellants, it must be conceded, had no immunity by their charter, or any particular privilege to do and permit the acts complained of in the declaration. In regard to them, they being acts of negligence and carelessness, in a matter respecting which the law would bind individuals to great care and prudence, a railroad corporation would be equally bound. We take no note of the charge in the declaration of annoyances caused by the shouting and noises made by those having charge of such stock as were placed in the pen, for they were not in a position to be controlled by the company or their agents. Should they, as they doubtless did, by their vociferous and rough conduct, outrage the decencies and proprieties of life, the company could not be held responsible, not having this control. It is the misfortune of the plaintiff's particular locality, that she is exposed to such annoyances, but they must be borne, the company, by its agents, not being supposed to encourage them.

On the point of negligence in conducting this pen, the testimony is quite conflicting. There is evidence to show it was cleaned out from three to five times a week, and no dead and decaying animals were permitted to remain in and about it

unburied, exposed to the action of the atmosphere, and by decomposition, producing noxious effluvia. Several witnesses testify there were such instances of neglect; and that bad smells were produced, greatly to the annoyance of the plaintiff, the testimony tends strongly to establish. The plaintiff's dwelling house was erected three years prior to the erection of the cattle pen, and it would appear, in a somewhat populous portion of the city. The maxim before quoted, ought to have admonished appellants, knowing, as they must be presumed to have known, it might become a nuisance to the immediate neighborhood, that should such be the result, they would be liable to repeated actions by parties injured, so long as it continued, and as the pen would, perhaps, be in the care of incompetent or negligent agents, such result was to be anticipated. The right of appellants to erect this pen in the very heart of the city, may, perhaps, not be denied, but it is equally undeniable, they would be responsible for all results occasioned by the negligent management of it, and by its becoming a nuisance. To avoid harrassing litigation, growing out of this condition of things, prudence would seem to point to the erection of such indispensable structures, so far removed from populous neighborhoods, as to free them from the hazard of such results, and if erected there or elsewhere, they should exercise such a supervision over them, as would insure their cleanliness, so that they would not become generators of noxious and unwholesome gases, depriving residents in their vicinity of the comfortable use and enjoyment of their property. Use your own property and privileges so that you injure no one else, is a maxim sanctioned by time, and by the acquiescence of the civilized world, since, without its reasonably strict observance, there could be no peace in communities.

The next point made by appellants is, as to the measure of damages.

On this point it is very difficult, if not impossible, to lay down any definite rule. That the jury have no right to give vindictive damages, under the evidence in this case, cannot be

denied, for the evidence of care in the management of the pen was quite strong, and we do not understand appellee as claiming such damages.

In the case cited by appellee, from which she informs us the instructions in her behalf were drawn (*Ottawa Gas Light Co.* v. *Graham,* 28 Ill. 73,) which was an action for injury to the well and premises, occasioned by the flowage of noxious matter therein, from the works of the defendant, and rendering the air insalubrious and injurious by their works, the court said, after stating one means of arriving at the damages: "Another means would be to ascertain the depreciation of the value of the property by reason of the erection of the gas works; to ascertain for how much less the property would sell in consequence of the erection; and in ascertaining that fact, all the circumstances which might show a depreciation in value, should be considered. If the property would sell for the same amount as before the erection of the gas works, independent of a rise in similar property, there would be no loss, but if it would not, then the difference would be the damages sustained."

But beyond the injury to the pecuniary value of the premises, are the injury and annoyance to the plaintiff while occupying them, and which cannot be guaged by any definite rule.

As to the value of the premises, there is no evidence in the record. For aught we can know, it may not exceed the amount of the verdict. The attention of the court and jury does not appear to have been called, by the defendants, to any rule by which the damages should be estimated. The only instruction asked by the defendants, was one as to what would be a reasonable time in which to remove dead carcasses from the pen. Not a particle of testimony was offered, going to show to what extent the property had been depreciated by the erection and management of the pen, or what was the value of the property. We, therefore, cannot say, there was any error in finding the verdict, nor can we say the damages are excessive, for they

may have been the result of the best judgment of the jury on the facts of annoyance by noxious smells, and rendering the atmosphere surrounding the premises filthy and unwholesome. If the damages recovered were for deterioration in the value of the plaintiff's property, such recovery would be a bar to any further prosecution for the same cause, but if they were for annoyance merely, and for rendering the air unwholesome, then a similar recovery might be had at every term of the court, and in this shape the plaintiff might recover ten-fold the value of the property. Such is the state of the record, that we have no means of determining on which of these grounds the jury found their verdict, and it must stand.

The instructions given for defendants were all they could reasonably ask, and refusing the first one was proper, for the reason that dead carcasses in such a pen, should be removed instantly, even in the winter season, for if they do not then give out offensive effluvia, they are offensive to the eye, and should be buried out of sight.

The instructions given for the plaintiff, on the evidence before the jury, were in accordance with the views expressed by this court in Graham's case, *supra*.

Great injustice may be done appellants by this finding, but from the state of the record, we are powerless to remedy it, there being no error on which we can base a reversal, and the judgment must be affirmed.

*Judgment affirmed.*