# OPINIONS OF THE COURT.

WILLIAM R. FAIRBANKS,
for the use of the First Nat'l Bank of Lacon

*v.*

THE STATE OF ILLINOIS.

*Opinion filed September 10, 1889.*

1. STATUTE OF LIMITATIONS—*act of 1847 not repealed by act creating Commission of Claims.* The act of 1877 creating the Commission of Claims does not repeal Section 4 of the act of 1847 which provides that "Hereafter all unliquidated claims against the State shall be proved up and filed as above within two years from the time such claims may have arisen."

2. SAME—*act of 1847 not annulled by legislative appropriation for barred claims.* The provisions of the statute of limitations cannot be annulled by the legislature making appropriations for claims barred by it.

3. SAME—*act of 1847 in force.* The statute of limitations of 1847 is in full force and effect.

4. DAMAGES—*caused by construction of dam; can be only one satisfaction.* Where a dam is constructed by lawful authority of the State there can be but one satisfaction for the injury sustained by landowners and that will be for permanent injury to the land caused by obstruction of the river.

5. SAME—*erection of dam by State; action does not survive.* A right of action for injury to land caused by the erection of a dam by the State does not survive.

6. ACTIONS—*damage by construction of dam—when it accrues.* Cause of action for damages caused by dam constructed by authority of the State accrues at the time the dam is completed and closed and the water runs over the dam.

The claimant in this case filed his claim against the State with the Auditor of Public Accounts on the 11th day of May, 1880.

The petition filed with said claim states in substance that the claimant is the owner of the southeast quarter

of section ten, township twenty-nine, north of range 3 west of the third P. M., Marshall county, Illinois, and was the owner of said land prior to October 20, 1877. That all of said lands are situated in what is known as "The Bottoms" and low lands bordering upon the Illinois river and had always been subject to an inundation from floods and high water in the Illinois river; that during the months from May to October inclusive, of each year, said river is usually at or near "low water mark" and the lands above left dry, producing grass for pasture and hay, crops of corn, &c.

That in the month of October, A. D. 1877, a dam was constructed across said river near Copperas Creek under and by virtue of the authority of the State of Illinois; that said dam permanently holds the water six and one-half feet higher than the low water mark at said Copperas Creek, prior to the erection of said dam, making low water mark in said river opposite the lands above described considerably higher than before the dam was built; that the summer freshets, which before were harmless, now raise the waters by reason of the dam in the river so as to render his land wet, unproductive and more liable to over-flow, whereby claimant had sustained damages of twelve hundred dollars.

To this petition the Attorney General on behalf of the State has plead the statute of limitations.

The proof taken in support of the petition tends to show that claimant had sustained some damage and would be entitled to an award in his favor if his claim is not barred by the statute of limitations. This is the serious question in this case.

The statute of limitations relied upon was passed by the Legislature in March, 1847, and, after providing for all unliquidated claims against the State then existing, Section 3 provides as follows: "All unliquidated claims arising from the internal improvement system shall be proved up the same as before mentioned before the Auditor of Public Accounts, and filed the same as

above; and any person having unliquidated claims, shall prove the same before the Auditor and file the claim and proof in like manner."

Section 4 provides, that "any person having unliquidated claims against the State who does not prove up the same, and file them as above, shall not be entitled to have them considered after that date; and hereafter all unliquidated claims against the State shall be proved up and filed as above within two years from the time such claims may have arisen; and any claim not presented and proved up as above and filed shall be forever barred from payment by the State."

It is insisted by claimant's counsel that this statute has been repealed by Act of 1877 creating a Commission of Claims and for filing claims with the Auditor.

It is not insisted that there is any act of the Legislature expressly repealing this statute of limitation, but that it is repealed, if at all, by implication.

It will be observed that the act creating a Commission of Claims provides a forum for hearing and disposing of claims against the State and as to the manner of presentation and proving such claims; but there is nothing in the act itself that is in conflict with the statute of limitations of 1847 above quoted and for that reason could not repeal this statute by implication.

It is again insisted that the Legislature have passed upon similar claims and made appropriation for their payment; all this may be true but a statute law cannot be annulled in any such manner.

There has not been any statute referred to, nor have we been able, after careful search, to find any that would seem to repeal this statute, limiting the time in which claims must be filed against the State. Our conclusion is that the statute of limitations of 1847 is in full force and effect.

Assuming that this statute is in full force does the proof bring the case within its provisions? This has seemed to us the most serious question presented and

we have had considerable hesitation in coming to the conclusion we have in regard to it.

The dam built at Copperas Creek was constructed by the authority of the State in a navigable river where the State had a lawful right to make the improvement; so that this case cannot be governed by that class of cases where the original act in building a dam, or placing an obstruction in a running stream, was wrongful. The injury for which damages are claimed, is for the permanent injury to claimant's land caused by the construction of the dam, thereby raising the water in the river opposite claimant's land. It is insisted in argument that the cause of action did not arise until the first crops were destroyed and that was, according to the proof, in 1878, and therefore the claim would not be barred; that it is in the nature of a continuing injury to claimant's land.

We think the rule well established, that where the obstruction, as in this case, was lawful, it could not be treated as a nuisance for that would imply the right to have it abated. Evidently there could be but one satisfaction for the injury sustained and that would be for the permanent injury to the land caused by the obstruction of the river.

In the case of the Chicago & Eastern Illinois R. R. Co. v. Loeb, 118 Ill., page 203, where suit was brought against the railroad company to recover damages sustained from the operation of the railroad by throwing cinders and ashes upon the plaintiff's premises, the railroad did not cross, but ran in front of plaintiff's property. The facts showed that the plaintiff had purchased the property after the railroad was constructed. At the trial the defendant submitted this proposition of law to the court: "The plaintiff in this case having purchased the property described in the declaration, after the railroad was built and in operation, he cannot recover in this action for the matters stated in the declaration, for the reason that the entire cause of action for which he is now suing was in his grantor, and it makes

no difference whether his grantor sued for the same or not." The court refused the proposition and an appeal was taken to the Supreme Court. It was argued in that case that the construction of the railroad was lawful, and produced no damage but that the operation of the railroad was the sole cause of the injury, and that in such case where the structure in itself does not cause damage, but its use, then the damage arising from its use is the cause of action. In deciding the case the court says: "We think it to be within the true intent and meaning of this provision (referring to the provision of the constitution under eminent domain) as to damage that there should be but one proceeding for recovery of damage, in which there should be recoverey for the entire damage, past, present and future; that it should be similarly regarded, in this respect, as the provision in regard to taking of property where there is but one proceeding and an assessment of compensation and damage once for all.", "The just compensation to be made for damage to land, was, in our opinion, intended as an indemnity, not for successive, constantly accruing damages, recoverable as they may afterward be suffered, but for all damage the land owner may suffer from all the future consequences of the careful and prudent operation of a railroad, it being the immediate damage done to the land owners' estate by changing its permanent condition and impairing its present value."

The court then decided, as the former owner could have sued and recovered for the depreciation in value of the property caused by the railroad the right of action was in him for a recovery of all damages that were or might be caused in the operation of the railroad and that there was no cause for action in his grantee.

In the cases of the Ottawa Gas Co. v. Graham, 28 Ill., 73; The Illinois Central Ry. Co. v. Grabill, 50 Ill., 241; Cooper v. Randall, 59 Ill., 317; Decatur Gas Co. v. Howell, 92 Ill., 19; Chicago & Alton R. R. Co. v. Maher, 91 Ill., 312, it was held that in an action brought for deterioration in value of real estate from a nuisance of

a permanent character all damages for past and future injury to the property may be recovered and that a recovery is a bar to all future actions.

Mills on Eminent Domain, Sec. 216, says: "The appraisement embraces all past, present and future damages which the improvement may thereafter reasonably produce."

In the case of Fowle v. The N. H. & N. R. R. Co., 112 Mass., 334, where the action was for damages caused by the building of a railroad in such a manner that at. times the current of a stream would be thrown upon plaintiff's land the court say: "And if injury results from a cause which is either permanent in its character or which is treated as permanent by the parties, it is proper that entire damages should be assessed with reference to past and probable future injury."

To apply the principle of these cases to the case under consideration; when this permanent obstruction was placed in the river so as to dam or raise the level of the water opposite claimant's land, if an injury, it was a permanent injury and damage to the value of his land for future use. His right to claim damage at once accrued. In the language of the statute, the cause of action had arisen and had he in three days afterward conveyed the land, under the authority of the case in the 118th Illinois above quoted, his grantee would not have had the right to bring a claim for damages; for the reason that the grantor would have sustained the damage by the permanent injury to his land as soon as the permanent obstruction was placed in the river and before the execution of his deed.

If it is true that as soon as the dam was built the future use of the land was permanently injured and the present value diminished so that a claim could at once be presented and claimant entitled to an award for both present and future damages, then the position taken by claimant's counsel, that although the dam was completed in the fall of 1877 because the crops were not destroyed until the summer of 1878, therefore the cause

of the action did not accrue until that time, would not seem to be well taken. The destruction of the crop in 1878 was the direct result of the permanent injury inflicted to the land by the building of the dam in the fall of 1877 and furnished the only proof of the extent of the injury or damage sustained. That is, whenever the flow of the water was obstructed and the level of the water raised then the damage to the land was sustained and the cause of the action had arisen.

If by reason of the level of the water in the river being raised damage results to lands adjoining, it relates back to the time when the obstruction was placed there or whatever it may have been that caused the raising of the level of the water.

This is sustained by the case of Thornton v. Turner, 11 Minnesota, 336.

The evidence shows that the level of the water in the river was permanently raised about three feet adjoining the land of claimant caused by the construction of the dam at Copperas Creek.

The time when this occurred is ascertained definitely by the report of Daniel C. Jenne, Chief Engineer who superintended the construction of this dam, published in Vol. 1 of Reports to the General Assembly of Illinois for 1879. He says that the dam was closed at 3 o'clock P. M. of the 21st day of October, 1877, and the water ran over the dam at 10 o'clock P. M. of the 22d, so that the level of the water must have been at the latter date, raised permanently. This in our opinion would relate back to the time when the dam was closed and fixes the date when the cause of action accrued.

The act providing for a forum to try this class of cases was passed and in force in July, 1877, before that date. Claimant was bound to file his claim within the two years or it would become barred by the statute.

Our conclusion is that this claim not having been filed until May of 1880—more than two years after the cause of action arose, it is barred by the statute of limitations and should be, for that reason, rejected.