# CHARLESTON.

EELLS v. CHESAPEAKE & OHIO RAILWAY COMPANY.

Decided March 9, 1901.

1. LIMITATIONS—*Running of Statute.*

Where a railroad bridge changes the current of a stream and injures land of a riparian owner lower down the stream by causing it from time to time, as freshets come, to wash away his land, the injury is not of a permanent nature in law, but intermittent, recurrent, and continuous, and the statute of limitations runs from actual damage by washing, not from the erection of the bridge. (pp. 66, 67).

2. INJURY—*Beginning of Damages.*

Where right by prescription to maintain a railroad bridge, and thus change the current of a stream and injure land of a riparian owner below by causing it to wash away his land is claimed, the commencement of time required for the prescription to ripen is, not from the erection of the bridge, but from the first actual damage to the land consequent upon the erection of the bridge. (pp. 67, 68).

3. PRESCRIPTIVE RIGHT—*Time of Action.*

Where a right as to land by prescription is claimed, the period required for the prescription to mature does not begin until some act or fact exists giving the party against whom the prescriptive right is set up cause of action. (p. 69).

Error to Circuit Court, Kanawha County.

Action by Hettie Eells against the Chesapeake & Ohio Railway Company. Verdict for defendant, and plaintiff brings error.

*Reversed.*

JOHN BAKER WHITE and PHILIP G. WALKER, for plaintiff in error.

SIMMS, ENSLOW & ALDERSON, for defendant in error.

BRANNON, PRESIDENT:

Hettie Eells brought an action of trespass on the case in the circuit court of Kanawha County against the Chesapeake & Ohio Railway Company, alleging as her cause of action that that Company had built a bridge for railroad purposes across a stream, and so constructed its piers and abutments obliquely in

the stream that they changed the natural course of the current and directed it against a certain lot of land of the plaintiff, causing the same to wash away and cave in to a specified extent and undermining a number of forest and shade trees left there as a protection of the lot as it fronted on said stream. Upon the trial, upon the evidence of both plaintiff and defendant, the court directed the jury to find a verdict for the defendant, and rendered judgment for the defendant, and the plaintiff sued out this writ of error.

I confess that I have encountered considerable difficulty in the consideration of this case. The important question in the case as presented to this Court is whether the action is barred by the statute of limitations. The bridge was built in 1870, and this suit was brought in January, 1898. The bridge remained as to this matter the same as when built. The question is whether the injury is of that character called a permanent injury, so that the plaintiff must sue at once after the building of the bridge, or at latest from the very first detriment from it to the plaintiff's lot, and recover damages in one action as for a permanent and enduring injury, entire damage for the whole injury, or whether she could sue at any time for the injury as it occurred at intervals, and recover for any damage within five years of its occurrence. The question is whether the injury of the plaintiff in this case, if any exists, is one known in the law as a permanent injury, requiring the action to be brought from the first instance of damage, within five years thereafter; or is that injury such as is known in law as recurring, intermittent and continuous? In the one case the action is barred; in the other it is not. If the injury is, in legal aspect, of the latter character, though the bridge was erected in 1870, and remained unchanged, and though the first distinguishable item of damage from it was shortly thereafter, yet the plaintiff could disregard it, and wait silent until the occurrence of another item of damage from freshet happening afterwards, and sue for damage to her lot from that occurrence, and other items of damage, within five years from their happening. We are of the opinion that the injury, if any, is to be classified as intermittent, not permanent. The mere building of the bridge did not cause any injury to the plaintiff. She could not sue for that alone. She could not sue until high water came and its force was, by reason of that bridge, thrown against her lot, and she received damage therefrom.

That damage would be occasional as freshets might come, re-
curring, intermittent, one freshet doing some damage, another
doing additional or greater damage. I shall not discuss this in-
tricate question and the nice lines of discrimination found in the
law on the subject. As I remarked in *Henry* v. *Ohio River R.
Co.,* 40 W. Va. 234, the lines of thought and demarcation are
close, the application of principles to instances difficult, and the
authorities variant. The cases are very numerous on the sub-
ject.[1] I will simply refer to the *Henry Case* and its citations,
and *Guinn* v. *Railroad,* 46 W. Va. 151, and *Drake* v. *C., R. I. &
Pac. Railway,* 63 Iowa 202. Thus, so far the action is not
barred. But counsel for the railroad company introduced an-
other point. They contend that even though the alleged injury
is to be classified, not as one of permanent character, but inter-
mittent, yet that time has established the right of the company to
continue the bridge in the condition in which it was when built,
though it does work damage to the plaintiff on occasions as time
passes. They say they have acquired right to do this by pre-
scription. This is a grave question in the case. It is established
by many authorities that one man can by prescription gain a
right of way over another man's land; that one man can by pre-
scription gain a right to back water or flow water over another
man's land by means of a mill-dam or the like. Many incorpo-
real rights or easements can be established by prescription. *Nich-
olas* v. *Aylor,* 7 Leigh 546; *Field* v. *Brown,* 24 Grat. 74; *Coalter*
v. *Hunter,* 4 Rand. 58; *Smith* v. *Russ* 84 Am. Dec. 739; Jones
on Easements, s. 158. I take it that upon the same principle a
right such as that involved in this case could be established by
prescription. It is essential, however, that we should be careful
about the law of prescription. An important element to estab-
lish it is, that the party whose land is to be made subject to a
right in another by prescription, should be chargeable with
acquiescense in the exercise of that right by the other party. The
prescription of which we here speak is different from the statute
of limitations, which is a bar whether the party acquiesce or
not; but to establish an incorporeal right by prescription, acqui-
escence by the party affected by it must exist. If it be shown
that that party protested against the exercise of that right, denied
that right, then no time will establish it. There are many ways
in which such protest may be manifested. Anything showing
that the party did not recognize, but repudiated and denied such

right, will prevent its existence, will prevent its consummation. The cases above cited show this. It is elsewhere abundantly shown. *Powell* v. *Bagg,* 69 Am. Dec. 262; Angell on Water-Courses, s. 200. The reason for this rule is that from length of time the law presumes that a grant of the right was once made, but not appearing, has been lost. Such has been the reason of the right given from the earliest time. Now, in this case it does not appear distinctly whether the plaintiff protested or not. It was a question of fact whether she did or not, a question for the jury, under all the circumstances; but the court took that question away from the jury. I incline to think this was error as to this point. Acquiescence is clearly a question of fact. *Thomas* v. *England,* 71 Cal. 456. It is true that enjoyment of the right for the period prescribed establishes that right as a conclusion of law; but whether under all the circumstances of the case it could be inferred that the plaintiff from silence acquiesced in such right, it seems to me was likely one proper to be left to the jury. But there is another view which is stronger with me to show error in withdrawing the case from the jury. It is this: Suppose we were to say that it is such a case as prescription would apply to, still prescription like limitation, has its period and must have a point of commencement in time. In this case that point of commencement is not as claimed, the date of the erection of the bridge. That erection only and simply would not start time running to establish prescription. The company had a perfect right to build the bridge. The plaintiff could not either sue or protest for that only, but only for damage consequent upon such erection, occurring some time thereafter, that is, when the water washed some portion of her lot away. It is well settled that the following extract from Jones on Easements, s. 165, states the true law: "A right of action must have arisen for the adverse user to constitute a right by prescription; there must have been such an invasion of the rights of the party against whom the right is claimed that he would have a cause of action against the intruder." *Smith* v. *Russ,* 84 Am. Dec. 739; *Turner* v. *Hart,* 15 Am. St. R. 243; Wood on Nuisances, s. 719; *Klein* v. *Gehrung,* 78 Am. Dec. 565. Therefore, the question is important in determining whether a right in the company to maintain these abutments and piers, and by them to change the current of the stream to the injury of the plaintiff's lot. When did the

first appreciable damage, if any, to the plaintiff's lot from that bridge occur? From that point of time prescription commenced to run. When that first damage occurred is a question of fact. Whether ten years elapsed from it is a question of fact. There was a great deal of evidence before the jury bearing on that crucial point, crucial for the solution of this point. The plaintiff claimed it was later in date than did the defendant. The court took the solution of that question away from the jury, and therein erred.

If in fact that bridge did change the natural course of the current of Coal River and thereby injure the plaintiff's lot; if that and not the natural flow did the injury, then that injury is one consequental from the building of the bridge, and dates from the first injury or damage, not from the building of the bridge. 2 Wood on Nuisances, s. 708, says: "There is a distinction between a prescriptive right to do some act upon one's own premises that operates injuriously to another, and a right to do some act *upon* another's premises. In the latter case, each act of user, before the user ripens into a right, is a trespass, for which an action may be maintained at any time, while in the former no action can be maintained until some *right* has been invaded. In the one case there is an actual invasion of the property itself, while in the other there is a mere invasion of some right." In the one case the mere exercise of the right, like a right of way over another's land, or a backing of water by a dam, is at once the commencement of the right; but in the other case, like the case in hand, where the injury is a mere consequence, not occurring *eo instanti,* it is otherwise. That bridge may have been causing the injury for a period sufficient to raise a prescription; but whether it had or not was a question for the jury.

All questions of fact are left untouched by this decision. It is because the court took the material questions from the jury that we reverse the judgment. There was enough evidence bearing upon those questions before the jury to call for the case being tried by a jury. See *Ketterman* v. *Dry Fork Railway Company,* 37 S. E. 683. Judgment reversed, verdict set aside, new trial granted.

*Reversed.*