# CHARLESTON.

ALLISON BARTLETT v. GRASSELLI CHEMICAL COMPANY.

Submitted November 15, 1922.   Decided November 28, 1922.

1   NUISANCE—*Elements of Cause of Action for Permanent Damages to Realty Stated.*

The requisite elements of a cause of action for original and permanent damages to real property, as contradistinguished from temporary or recurrent damages, are, ordinarily, permanency of the cause of the injury and constancy and materiality in the injury to the property, working serious impairment of its value.   (p. 450).

2.   SAME—*Element of Permanency of Cause of Injury Lacking Permanent Damages.*

As a general rule, the element of permanency of cause of injury is lacking in cases of public and private nuisances working such injury, because, in such cases, the nuisance constituting the cause from which the injury and damages arise, is abatable, both by acts of the parties, and especially of the wrong doer, and by judicial process.   (p. 450).

3.   SAME—*Action Maintainable for Continuing Nuisance.*

Except in the case of public and *quasi* public corporations, a business conducted, or a structure or works erected and maintained by a person or corporation, on his own property, in such manner as to work injury and detriment to an adjoining or neighboring owner of land, in respect of the use,

92 W. Va.

enjoyment and value of his property, is a continuing nuisance for which successive actions may be maintained and temporary damages only recovered, and which, if the injury is irreparable, may be abated by judicial process, at the instance of the injured party, unless such relief is precluded by waiver of right thereto, in some form.  (p. 450).

4.  SAME—*Damages to Land From Business Held Temporary, Not Permanent.*

·Damages to land, occasioned by emission of smoke, gases, dust and fumes from smelting furnaces maintained and operated on an adjoining or neighboring tract of land, causing deposit of chemical substances which impair its enjoyment, productiveness and value, are temporary in the legal sense of the term, and permanent damages are not recoverable for such an injury.  (p. 455).

5.  SAME—*Agreement as to Cause of Action Not Recognized.*

A cause of action for temporary damages so created cannot be treated and maintained in litigation, as one for permanent damages, by tacit agreement of the parties, or the form of procedure adopted by them.  (p. 448).

Error to Circuit Court, Harrison County.

Action by Allison Bartlett against the Grasselli Chemical Company.  Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*A. W. Kopp, Hoffheimer & Templeman, Edward G. Smith,* and *Melvin G. Sperry,* for plaintiff in error.

*E. A. Bartlett* and *Hogg & Hogg,* for defendant in error.

POFFENBARGER, PRESIDENT:

The judgment for $15,500.00, complained of on this writ of error, was recovered by a farmer, owning and residing upon a tract of land containing about 137.5 acres, against a corporation owning and operating a large industrial plant, situated upon a 160-acre tract of land, owned by it, in the reduction of zinc ores, upon the ground of injury to the agricultural, residential and market values of the farm, by reason of chemical deposits upon it from fumes, gases, and dust

emitted from the defendant's furnaces and carried over the land by air currents, or spreading over it through the air. One of the deposits complained of is zinc-oxide which, having been deposited upon vegetation on the farm and eaten by live stock, has proved itself to be deleterious and fatal, in some instances, according to the contention and claim of the plaintiff, and another is sulphur-dioxide which, it is said, having come into contact with moisture and iron in the soil, forms or creates sulphuric acid, sulphur-trioxide, zinc-sulphate and iron-sulphate, causing excessive acidity of the soil and consequent diminution of its fertility and producing capacity.

Some of the counts in the plaintiff's declaration are so framed as to claim right of recovery upon the theory of re-current or temporary damages, while others are so drawn as to assert right of recovery of permanent damages. The case was tried upon the theory of permanent damages. In the course of the trial, the counts for temporary damages were ignored by the parties as well as the court. A plea of not guilty was entered in May, 1920, and 13 special pleas of the statute of limitations, in September, 1920. No demurrer seems to have been interposed to the declaration or any of its counts.

The action was commenced March 7, 1919. According to the contention of the defendant, the injury, if any, dates back in its inception, to the commencement of the operation of the plant, or at least, to a time shortly thereafter, when the dust, smoke and gases first affected the plaintiff's land, and that, therefore, the cause of action arose more than five years before the institution of the suit, and is barred by the statute of limitations. The plaintiff insists that the statute began to run from the date on which the injury to the land became appreciable and noticeable, about the year 1915.

A part of the plant was completed and put into operation in 1911 and additional units were added from time to time. There are ten blocks of furnaces, the first one of which was installed and put into operation in March, 1911 and the last one, October 28, 1915. In the meantime, at various dates,

the other eight were installed. From November 1916 until March, 1918, ten gas producers were constructed and put into operation, in which large quantities of coal were consumed in the production of gas for use in the furnaces. The coal so used is mined on the 160 acre tract of land on which the plant is situated. The zinc ores are brought to the plant from roasting furnaces, in Ohio, Indiana and Pennsylvania, after a process of treatment to which they are subjected in those furnaces. In connection with the ores, considerable quantities of anthracite screenings and Pennsylvania coke are used in the furnaces. The ores treated increased from 14,542 tons in 1911 to 60,203 tons in 1915, and went up to 67,262 in 1917. The anthracite coal screenings used began with 12,320 tons in 1911 and amounted to 38,519 in 1917. The annual consumption of Pennsylvania coke ran from 180 tons in 1911 to 13,293 in 1916. These facts have more or less bearing upon the issue as to when the injury complained of occurred.

Notwithstanding the acquiescence of the parties and the court, in the theory upon which the case was tried and disposed of, it is necessary to determine and define the nature of the cause of action, in respect of the application of the statute of limitations. Willingness of the parties to this action, to forego such an inquiry and by agreement to adjust their controversy, upon the theory of original and permanent damages, does not justify the adoption of a rule that will operate unjustly, in its application to other controversies of the same kind. An erroneous decision respecting this question, in this cause, would be a precedent which the court hereafter would be required to follow, however unjustly it might operate, or to overrule. In this connection, no force or effect can be allowed the implied agreement of the parties as to the nature of the cause of action. There was no such agreement at the date of commencement thereof. At that time, it stood unaffected by any agreement either expressed or implied. The date of commencement of the action, not that of the appearance and entry of pleas nor of the agreement as to the basis of trial, is one of controlling elements in the inquiry as to whether or not the right of action was barred. Going back

to that point of time, we must take into consideration the nature of the cause of action as it stood then, together with the lapse of time between it and the assertion of the right of action, and determine from these circumstances when the statute began to run. We repeat that the tacit agreement between the parties, made after the institution of the action, is not an element to be considered. It may be advantageous to the defendant and desirable on its part, to have the entire damages adjusted and by payment thereof obtain a license to continue its business, under the principle of estoppel. It may have been moved to adopt this course by the opinion that it would be in a better position to invoke lack of time as a defense. Whatever the motive may have been, this conduct or agreement was subsequent to the institution of the action. It constitutes no part of the action, wherefore no notice can rightfully be taken of it, upon the inquiry for the nature of the cause of action, or the beginning or the running of the statute.

An apparent contradiction of this conclusion may be found in certain cases, but it will be found, upon examination, to be only apparent. Public and *quasi* public corporations, in the exercise of their rightful powers sometimes exceed the rights obtained by them, or inflict damages by the negligent exercise thereof. In as much as their functions and operations cannot be enjoined, because of their public nature, and, under the power of eminent domain, they could have acquired right to do the things complained of, if reasonably necessary to their operations, they as well as the injured parties may elect to treat the injury and damages in such cases, as permanent, even though in law, they may not be. *Ridley* v. *Seabord & R. R. Co.*, 118 N. C. 996; *White* v. *N. W. N. C. R. Co.*, 113 N. C. 610; *Ill. Cen. R. Co.* v. *Grabill*, 50 Ill. 241; 8 Am. & Eng. Ency. L. 687. This principle was adverted to, but not applied, in a controversy between private persons, in *Hargreaves* v. *Kimberly*, 26 W. Va. 787; but, in that case, it was deduced from decisions in which the wrong doers were corporations of the class here referred to. It was again mentioned as an established rule in *Watts* v. *Norfolk & Western*

*R. Co.,* 39 W. Va. 196. In no other class of cases does it seem ever to have been adopted. This doctrine, as defined in the case of its apparent origin, *Ill. Cen. R. Co.* v. *Grabill,* cited, seems to proceed upon the theory that the plaintiff may, in some cases, have two grounds of action, one for the annoyance or inconvenience occasioned and the other for deterioration of the value of his property, by reason of the wrong, and may assert both in one action. As to the former, one recovery would not bar future actions, but, as to the latter, it would. The decision in that case involves the principle of former recovery, rather than that of limitation of action.

An important factor in the determination of the character of an injury to real property and the nature of the damages resulting from it is the character of the injury itself. Though continuous, it may be slight and readily compensable in damages, as well as remediable by the injured party. Though of considerable magnitude, it may not be continuous. There may be a continuing cause without continuous injury. The latter may be intermittent and recurrent. It may involve a trespass or there may be injury without an actual trespass. Upon such an injury as we have here, under the multitudinous facts and circumstances disclosed by the hundreds of cases that have arisen, there have been many things to consider. It would be impossible to review all of the decisions bearing upon the question of the application of the statute or to classify them. There are some general propositions, however, that can be asserted with safety, as to the requirements of a cause of action for original and permanent damages. The injury must be constant and continuous, not occasional, intermittent or recurrent. On this point, Judge BRANNON, speaking for this court, in *Henry* v. *Ohio River R. R. Co.,* 40 W.Va. 244, said: "Now, this embankment itself has the element of permanency, it is true, and that far complies with the rule warranting recovery of past and future damages in one action, but it does not necessarily *per se* injure the plaintiff's property in respect to the mode of injury charged; that is overflow. That happens only when rains or snows come." See also *Eells* v. *Chesapeake & Ohio Railway Co.,* 49 W. Va.

65; 67. Another important element to be considered is the character of the cause of the injury. If it is temporary, the damages are not original and permanent. If the structure or other agency causing the injury is susceptible of alteration, at slight expense and trouble, so as to terminate the injury, it may be assumed that the person causing it, will make the alteration, rather than suffer repeated actions for damages. *Henry* v. *Ohio River Railway Co.*, cited. "Permanent damages are given on the theory that the cause of injury is fixed and indeterminable and the property must always remain subject to it. The injured party is limited to temporary damages, when the injury is intermittent and occasional, or the cause thereof remediable, removable or abatable. It assumes that the plaintiff himself may be able to remedy the cause of injury or relieve his property from its ill effect, or that the defendant will be induced or compelled, by the infliction of repeated judgments for the damages, to remove it." *McHenry* v. *Parkersburg*, 66 W. Va. 533, 535. This requisite element of permanency does not exist and cannot be found in those cases in which the structure, business or other agency of injury is unlawful and may be abated, at the instance of the injured party. To make the cause of the injury permanent in the legal sense of the term, there must be legal right to maintain it in force or operation. If against the will of him who has set it in force, it may be abated by legal process, at the instance of the complaining party, it must necessarily be temporary and the damages temporary, and so the authorities say. *Lyons* v. *Fairmont Real Estate Co.*, 71 W. Va. 754; *Hargreaves* v. *Kimberly*, 26 W. Va. 787; *Ohio etc. R. Co.* v. *Watchter*, 123 Ill. 440; *Baker* v. *Leka*, 48 Ill. App. 353; *Ohio etc. R. Co.* v. *Elliott*, 34 Ill. App. 589; *Southern Ry. Co.* v. *Morris*, 119 Ga. 234; *Southern Ry. Co.* v. *Cook*, 117 Ga. 286; *Holmes* v. *Atlanta*, 113 Ga. 962; *Augusta* v. *Lombard*, 101 Ga. 724; *Pettit* v. *Grand Junction*, 119 Ia. 352. Nor are permanent damages always recoverable in cases in which the cause of injury is permanent. *Eells* v. *Chesapeake & Ohio Railway Co.*, 49 W. Va. 65; *Henry* v. *Ohio River Ry. Co.*, cited.

In actions against counties, cities, towns and other municipal corporations, and railroad companies and other public utility corporations, clothed with the power of eminent domain, for injuries inflicted upon or done to real estate owned by private persons, by reason of the negligent or wrongful construction of their works, the cause of the injury is generally deemed to be permanent. Of course, it is possible to conceive of extreme cases in which such corporations might injure or damage property, by resort to methods and acts altogether unnecessary to the performance of their public functions, in consequence of which it would not be possible for them to obtain the right, under the power of eminent domain, to do so. In such a case, the wrongful act would no doubt be a nuisance pure and simple, wherefore it could be dealt with as other nuisances. But, ordinarily, the injurious acts of such corporations are necessary in the sense above indicated, and the right to perform them, if not already acquired, could be obtained by the exercise of the power of eminent domain. In almost all cases of that kind, the acts complained of are of such character. Accordingly, it has been uniformly held by this court, that the acts of such corporations working injury and damage to private property, not involving or amounting to a taking thereof, cannot be enjoined and abated as nuisances. *Spencer* v. *Point Pleasant & Ohio R. R. Co.*, 23 W. Va. 406; *Arbenz* v. *Wheeling & H. R. R. Co.*, 33 W. Va. 1; *Watson* v. *Fairmont etc. Railroad Co.*, 49 W. Va. 528; *Ohio River R. Co.* v. *Gibbens*, 35 W. Va. 57. Although in these decisions as well as the decisions in similar cases in other jurisdictions, the right of recovery is based in terms upon the theory of negligent construction, the real ground of liability seems to be the constitutional provision guaranteeing compensation for private property damaged for public use. This provision inhibits the taking of property for public use, by a company incorporated for the purposes of internal improvement, until just compensation shall have been paid, or secured to be paid, to the owner; but it does not provide for payment of compensation, or security therefor, as a condition precedent to right to damage private property

for public use.   It impliedly gives the right to inflict such damage, but, at the same time, it makes the corporation liable for compensation therefor.   Even the guaranty against the taking of private property for such purpose, without antecedent payment of compensation or security therefor, may be waived, without losing the right to compensation.   *Briar Creek Ry. Co.* v. *Kanawha Central Ry. Co.,* 70 W. Va. 226. When, in such cases, the injury is immediate and direct, the damages are regarded as original and permanent, and the permanency of the cause is one of the elements upon which the conclusion is based.   *Smith* v. *Point Pleasant & Ohio R. Co.,* 23 W. Va. 451; *Guinn* v. *Ohio R. R. Co.,* 46 W. Va. 151; *Blair* v. *City of Charleston,* 43 W. Va. 62; *Keene* v. *City of Huntington,* 79 W. Va. 713.   But, if the injury is not contemporaneous with the act causing it but comes later, the damages are not original.   *Eells* v. *C. & O. Ry. Co.,* 49 W. Va. 65; *Henry* v. *Ohio R. R. Co.,* 40 W. Va. 234.   Hence, it seems that permanency and contemporaneousness of the injury must concur, to make the damages permanent.

There is no ground upon which an individual or a purely private corporation can be accorded right to maintain and continue in force a business, structure or other agency working injury to the property of another, in such manner and to such extent as to constitute a private nuisance, if the injury so wrought is such as impairs or destroys the enjoyment or value of the property, or is deemed by the law to be irreparable and not compensable in damages.   *Sullivan* v. *Jones, etc. Steel Co.,* 208 Pa. St. 540; *Town of Bristol* v. *Palmer,* 83 Vt. 54; *Campbell* v. *Hayman,* 63 N. Y. 568; *Waters* v. *McElroy,* 151 Pa., 549; *Hennessy* v. *Carmony,* 50 N. J. Eq. 616; *American Smelting and Ref. Co.* v. *Godfrey,* 89 C. C. A. 139; *McCleery* v. *Highland Boy Gold Min. Co.,* 140 Fed. 951; *Arizona Copper Co.* v. *Gillespie,* 100 Pac. 465; *Woodruff* v. *North Bloomingfield Gravel Min. Co.,* 9 Sawy. 441; *Wente* v. *Commonwealth Fuel Co.,* 232 Ill. 526; *Broadbent* v. *Imperial Gas Co.,* 7 De G. M. & G. 436; *Stratton & T. Co.* v. *Mariwether,* 150 Ky. 363.

In addition to the right of direct judicial abatement, the

injured party has the right of coercion to abatement by the wrong doer himself, by means of repeated recoveries of damage. If asserted before the right to maintain or continue the injurious act is acquired by prescription, these rights of recovery are unlimited in respect of time. Almost every pure nuisance is regarded in law as being continuous. Every day, month and year of its maintenance confers a new right of action. *Knapp etc. Mfg. Co.* v. *New York etc. R. Co.,* 76 Conn. 311; *Monroe* v. *McCranie,* 117 Ga. 890; *McConnell* v. *Kibbe,* 29 Ill. 483; *New Salem* v. *Egle Mill Co.,* 138 Mass. 8. This proposition rests upon the legal principle that the wrong doer has a legal right and is under a legal duty to terminate the cause of the injury. *Kansas Pac. Co.* v. *Mihlman,* 17 Kan. 224; *Kansas City* v. *Frohwerk,* 10 Kan. App. 120.

The distinction between damage to private property for public use and damage to it by a private nuisance, seems to be denied, in *Virginia Hot Springs Co.* v. *McCrary,* 106 Va. 461, 471, because the decisions in cases involving damage for public use do not in terms place the permanency of the cause of the injury upon the right of eminent domain. This position is, in our opinion, altogether untenable. In a great many of those decisions, it will be found, that the courts have laid particular stress upon the absolute right of a public corporation to continue the cause of injury, if necessary to the performance of its public functions, and denied power in the courts, to restrain their operations, on account of the great public interests dependent upon them. In the opinion in the case above referred to, which is strongly invoked in the argument submitted for the plaintiff in error, the decisions in actions against public corporations are very extensively relied upon. In addition thereto, general propositions asserted in text books are invoked without any analysis of the precedents upon which they are based and which, when examined, are found in almost, if not every, instance to be cases of damage to private property for public use. Most of those underlying the text of sec. 210 of Gould on Waters, quoted in that opinion, are that class of cases. A few of them involve flowage of land by mill dams erected in streams,

the erection and maintenance of which are authorized by statute, subject to liability of the owners thereof for damages for injuries done to land and other property. *Close* v. *Samms,* 27 Ia. 503; *Hester* v. *Broach,* 84 N. C. 252. Other cases to which the text refers, not only deny right of recovery for prospective damages, but, in some instances, also denominate the injurious act nuisances and declare them to be subjects of abatement. *Cobb* v. *Smith,* 38 Wis. 21; *Bare* v. *Hoffman,* 79 Pa. 71. In the Virginia case to which reference has been made, the court seems to have based its conclusion as to the permanency of cause of injury, upon the character and uses of the structures involved and the intention of the owner. The assumption of right of the wrong doer to continue the wrong, seems to have been regarded as well founded. The basis adopted is entirely too narrow. It ignores the right of the injured party to abate the nuisance by judicial process. To this subject of abatement, the author of Gould on Waters devotes an entire chapter.

The injury in respect of which this action was brought, is consequential and flows from a purely private nuisance. There has been no trespass upon the plaintiff's lands. The furnaces and business working the injury are located and conducted upon the defendant's own land. It is clearly within its power to abate the nuisance, by an alteration of its furnaces or methods of operation, or by cessation of the operations working the injury, and it is likewise abatable by judicial process. Hence, it lacks the element of permanency, essential to right of recovery of permanent damages measured by depreciation in the value of the land. Nothing disclosed by the record, except the conduct of the parties in the adoption of the theory of permanent injury, could give it such status; and that can have no such effect for reasons already indicated. It may be added that the rules and principles adopted for determination of the character of causes of action are founded upon the experience of centuries, as well as the accumulated wisdom of ages. Their chief purpose is formation of basis upon which just and equitable results may be worked out in litigation, when the parties are unable or un-

willing to adjust their controversies by agreement. If they are to be permitted to change the nature of causes of action by agreement or conduct, such rules and principles will soon be wholly unsettled and become unreliable. Besides, no complete agreement upon anything can be deduced from this record. The defendant concurs in the character given the damages by certain counts of the declaration, apparently only to defeat the action by invocation of the statute of limitations which clearly would not apply, if the damages were accorded their true legal character. It denies the damages alleged and attempted to be proved and also liability for them, even though proved, by invocation of the statute of limitations. The tacit agreement settles nothing, and complicates the case, by the introduction of a legally false issue. Moreover, if sustained, it might give the plaintiff compensation far in excess of his injury, on the one hand, and deny him any compensation, on the other. If he recovers, some neighbor suffering like injury may abate the wrong, in which case the plaintiff would get pay for his land and still retain it. On the other hand, he might lose what he is really entitled to, by force of the statute of limitations. The courts cannot sanction litigation carried on as a game of chance or skill.

Our conclusion is that the record presents no cause of action for permanent damages and that the case has been tried and disposed of upon an altogether erroneous and untenable basis. As all of the rulings are predicated on that basis and the new trial will have to be conducted upon an entirely different one, there is no occasion to review the rulings specifically complained of.

The judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and remanded.*