JOHN C. VANA, JR., ET AL., APPELLANTS, V. GRAIN BELT
SUPPLY COMPANY ET AL., APPELLEES.

8 N. W. (2d) 837

FILED APRIL 2, 1943.   No. 31522.

*Fischer, Fischer & Fischer,* for appellants.

*Tunison & Joyner, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-MORE, YEAGER, CHAPPELL and WENKE, JJ.

PAINE, J.

Plaintiffs sought an injunction to permanently restrain defendants from operating a hog-feeding lot, and in addition asked for damages in the sum of $5,000. Issues were joined and trial had, and judgment entered dismissing plaintiffs' petition, each party to pay their own costs. Plaintiffs appeal.

The petition discloses that John C. Vana, Jr., and wife, the plaintiffs, are owners of an 11-acre tract in Sarpy county, upon which they reside, and that defendants operate and maintain a hog-feeding lot just north of plaintiffs' premises; that running through the premises of defendants is a small fresh water creek, fed by a number of springs above defendants' premises, and which continues through the premises of plaintiffs.

The petition alleges that defendants have a large number of hogs, which are fed, among other things, tankage from a rendering plant. It is also alleged that large quantities of decaying and putrid animal matter are dumped into this creek daily, causing the stream to become corrupted and rendered unwholesome and impure and unfit for either human or animal consumption; that defendants have permitted decaying and putrid hog dung to accumulate, which is offensive and dangerous to the health of plaintiffs and their family; that unless defendants are restrained they will continue to contaminate the stream and render it unfit for use in the future. Plaintiffs allege that the present operation of said hog-feeding lot constitutes a nuisance and a health menace, and injures plaintiffs in the proper enjoyment of their land and the stream flowing through it; that plaintiffs have no adequate remedy at law, since said nuisance is a continuing one; that by reason of the pollution of said stream and the said odors, by which the value of plaintiffs' property has been depreciated and the use thereof restricted, plaintiffs have been damaged in the sum of $5,000, and they pray for a permanent injunction.

The defendants' answer admits the ownership of the premises described in the petition, and the operation of the hog-feeding lot by defendants, and denies all other allegations of the petition. Defendants allege that the Grain Belt Supply Company is engaged in the production, manufacture and sale of anti-hog-cholera serum and hog-cholera virus, and has held a license from the United States department of agriculture for the manufacture and sale of such products since 1914; that said products are necessary for the protection of swine health; that it is necessary in the manufacture of serum and virus to have adequate supplies of pigs and hogs, which must be kept available at a point reasonably convenient to the place of manufacture; that the manufacturing establishment of Grain Belt Supply Company is located adjacent to the Union Stock Yards, Omaha; that defendants' hog lot is located on an improved highway in Sarpy county, about 3½ miles therefrom.

It is further alleged that Omaha is one of the largest live stock markets in the world; that for many years large numbers of cattle, sheep and hogs have been fed at many similar premises within a radius of 2 to 15 miles of said Union Stock Yards; that a number of similar feed lots lie along and adjacent to the stream above the premises of plaintiffs and defendants; that the feeding of large quantities of cattle, sheep and hogs at feed lots such as that of defendants is a proper and necessary part of the marketing of large quantities of live stock; that the above mentioned stockyards and the packing plants located adjacent thereto constitute a major industry in Nebraska and in that part of Sarpy county in which defendants' premises are located.

It is also alleged that at all times defendants have kept said feed lot in a clean and sanitary manner, and in as good condition with respect to odors of live stock as is practicable in the operation of a feed lot; that defendants have regularly scraped out said feed lot with scrapers, and employed men to load the refuse upon wagons, and have hauled out each season many loads of manure and spread same upon fields in the vicinity of said feed lot for fertilizer; that the operation of said feed lot has not depreciated the value of plaintiffs' property and does not constitute a nuisance. Defendants further allege that said feed lot is not within the corporate limits of any city, town or village; that said premises were operated as a feed lot by defendants and their predecessors in title for many years, longer than the period prescribed by the Nebraska statute of limitation relating to real estate.

Defendants further allege that at the time plaintiffs purchased their property in 1934 they knew that defendants were operating their premises as a feed lot, and made no objection thereto; that following the year 1934 defendants have erected valuable improvements on their premises for the purpose of facilitating the use thereof as a feed lot, and that plaintiffs, well knowing that said sums were being so expended, made no protest, and are now estopped to object to the use of said premises by defendants for that purpose.

Defendants further allege that on October 5, 1940, plaintiffs filed a suit in the district court for Douglas county, complaining of the operation of defendants' same hog-feeding lot and a rendering plant then located thereon, a copy of the petition being attached as exhibit A, and it was agreed between plaintiffs and defendants that, if defendants would discontinue the operation of the rendering plant, plaintiffs would make no objection to the operation of the hog-feeding lot and consent that said premises should continue to be operated as a feeding lot in the future; that pursuant to said agreement, a copy being attached to the answer as exhibit B, the defendants, at a large loss in investment in a profitable enterprise, sold, dismantled and disposed of said rendering plant, and fully performed all of the provisions of the agreement; that subsequent thereto the suit of plaintiffs was dismissed with prejudice; that on April 8, 1941, plaintiffs filed a petition to vacate said order of dismissal and asked that the case stand for trial upon the plaintiffs' original petition, to which petition a demurrer was interposed by defendants; that said demurrer was sustained on July 7, 1941, and thereafter motion to dismiss was sustained, which judgment has not been appealed from. Wherefore, defendants pray that the petition be dismissed. No reply to this answer appears in the transcript.

On May 18, 1942, the cause having been tried, argued and submitted on briefs, the court, having viewed the premises at the request of parties, found against the plaintiffs and that their petition should be dismissed.

The plaintiffs rely for reversal on the charge that the decision is not sustained by sufficient evidence and is contrary to law, and allege generally that there were errors of law occurring at the trial. Plaintiffs' first argument is based on the fact that the pollution of the creek running through the premises of the plaintiffs and defendants is unlawful under section 28-1013, Comp. St. 1929, which provides that it is an offense to put filthy substances into running water of which use is made for domestic purposes, and the following section provides that one shall not contaminate creeks

to the annoyance of others, and shall abate the nuisance within 24 hours, and section 28-1017, Comp. St. 1929, provides that it is an offense to maintain a nuisance which gives off offensive smells and becomes injurious to health, and attention is called to section 37-516, Comp. St. 1929, that it is an offense to dump or drain refuse near any waters of the state, and that refuse is broadly defined.

The purport of these citations from our statute is to prove that the defendants were committing unlawful acts in conducting their hog-feeding operations, and while admitting that such operations have been conducted for more than ten years, and were conducted prior to the time the plaintiffs purchased the premises, still the plaintiffs insist that one cannot gain a prescriptive right to commit an unlawful act.

This court has held that cattle- and hog-feeding yards are not in themselves a nuisance, and that they become such only when improperly maintained or conducted. *Francisco v. Furry,* 82 Neb. 754, 118 N. W. 1102. The evidence in the instant case does not justify a finding that a nuisance has been created, in violation of any of these sections of the statutes.

Let us now examine the evidence in this case. The creek which flows through the yards of both plaintiffs and defendants drains over a thousand acres of land generally used for feed lots for cattle, hogs and sheep. Some of these feed yards at the upper end of this creek bed are dry except when hard rains come, which wash the manure into the creek, and in the hardest rains this creek has been known to become a raging torrent, 10 feet deep and 20 to 30 feet wide at the top, and in such times would carry down débris of all kinds into the Pappio, into which this creek empties, and ultimately into the Missouri river.

It may be admitted, as testified by Dr. Colien, of the department of bacteria of Creighton medical school, who made an analysis of the water in this creek, that it has colibacillus, which would not be allowed in public swimming pools, and would be condemned for human use. He testified

that the odor of this creek is the one that one would naturally get from swampy water, not exactly putrefaction but disagreeable, and in addition there was a definite odor of fecal material.

The evidence indicates that the number of hogs usually kept in this tract by defendants is not more than ordinarily kept in such a hog lot. There is evidence that Omaha is a great live stock market, and that the operation of the many such hog lots in this territory, which is outside of the corporate limits of any city, is not only a lawful business but is a necessary business in connection with the live stock markets of Omaha. The evidence of the defendants indicates that they feed no decayed animal matter, but feed corn, oats, tankage, soy beans, linseed meal, alfalfa meal, salt and lime. There is evidence that the defendants maintain this hog lot under conditions as clean and sanitary as can reasonably be maintained, considering the general fixed habits and characteristics of hogs.

In 1923 a case came to this court from the city of Lincoln, entitled *Mathews v. Mozer*, 111 Neb. 71, 195 N. W. 943, involving a large establishment where an extensive poultry business was carried on, and thousands of chickens, turkeys, geese, ducks and calves were slaughtered and dressed on the premises, and the trial judge made a careful inspection of the premises, as did the court in the case at bar. In that opinion it was said that the place when properly conducted should not be a nuisance, either to the public or to the plaintiff; that the odor which came to the plaintiff was occasional rather than constant; that it was not injurious to health, and not worse than many city dwellers in business sections are required to endure.

"As one man's enjoyment of property must be considered in connection with the reasonable and lawful use of other property by his neighbors, where pigs are raised under conditions as clean and sanitary as can reasonably be obtained, considering the characteristics of the animal and the necessity of confinement to close quarters, the fact that odors from those quarters are carried over the premises of

the summer residence of another will not make an actionable nuisance." *Clark v. Wambold,* 160 N. W. 1039 (165 Wis. 70).

The defendants plead estoppel in this case. The facts with reference to this defense show that an injunction proceeding was started some months before this one. The same trial judge went out and examined the place, issued an injunction, and required the defendants to modernize the rendering plant then conducted thereon.

An appeal was taken from that decision to the supreme court, and while that appeal was pending in this court negotiations were entered into between the parties. A copy of this agreement is attached to the answer, dated November 30, 1940, and is signed by the two plaintiffs in this case, and witnessed by their attorney in the present case, and also by the defendants.

In this agreement the defendant corporation, which was at that time also operating a rendering plant on these premises, decided that it would discontinue and permanently cease the operation of the rendering works, and while said part of its business was then profitable, and would have been much more so since said time, the defendant absolutely discontinued that part of its business. This agreement provided that the plaintiffs in this case would make no objection to the continuation of the operation of the feeding lot, but were desirous of securing a discontinuance of the rendering works on said premises. The agreement provides in paragraph 3 that the defendant expressly reserves all rights to continue the operation of the feeding lot, and that the plaintiffs herein will hold second parties harmless from any and all claims for damages arising out of the operation of the feeding lot.

In the argument in this court, the plaintiffs admit that in this agreement they agreed that the defendants could continue running the hog-feeding lot on these premises, but in defense of the instant case they argue that they have discovered since the signing of the agreement that the hog lot itself, as then and now conducted, is in every way as

great a nuisance as the rendering plant was which the defendants discontinued, and therefore insist upon their right to bring this action for damages and an injunction.

Without setting out this contract in full, we believe that the defendants' plea of estoppel has been fairly sustained. Plaintiffs contracted by solemn instrument, for a valuable consideration, that defendants might "continue to operate the feed lot," and they knew exactly what would be done in the conduct of that feed lot. They received a valuable consideration, viz., defendants' dismissal of a valid appeal to the supreme court and an absolute discontinuance of the rendering plant then conducted thereon. This court believes that the plaintiffs received great benefit from their contract, and in that contract they consented that the defendant had reserved the right to continue the hog-feeding operations, and this court believes it but fair to hold them to this part of their agreement.

We fail to find in the evidence any evidence of any different damage suffered by any and all of the owners of land along this creek.

This court has reached the conclusion that the trial court, which had at least twice made a careful examination of these premises, reached the correct conclusion, and the judgment of dismissal of plaintiffs' petition is affirmed.

AFFIRMED.

The following opinion on motion for rehearing was filed July 13, 1943.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

PAINE, J.

This case was argued to the court on March 1, 1943, and

opinion was released April 2, 1943, and is found *ante*, p. 118, 8 N. W. (2d) 837, in which the judgment of the trial court was affirmed.

On May 12, 1943, a motion for rehearing and brief in support thereof was filed by the plaintiffs-appellants. We have carefully reconsidered our former opinion, and have reached the conclusion that the question of estoppel is not material to the issues, and its discussion is unnecessary. We do hereby set aside the former opinion, and adopt the following opinion in the place thereof.

Plaintiffs sought an injunction to permanently restrain defendants from operating a hog-feeding lot, and in addition asked for damages in the sum of $5,000. Issues were joined and trial had, and judgment entered dismissing plaintiffs' petition, each party to pay their own costs. Plaintiffs appeal.

The petition discloses that John C. Vana, Jr., and wife, the plaintiffs, are owners of an 11-acre tract in Sarpy county, upon which they reside, and that defendants operate and maintain a hog-feeding lot just north of plaintiffs' premises; that running through the premises of defendants is a small fresh water creek, fed by a number of springs above defendants' premises, and which continues through the premises of plaintiffs.

The petition alleges that defendants have a large number of hogs, which are fed, among other things, tankage from a rendering plant. It is also alleged that large quantities of decaying and putrid animal matter are dumped into this creek daily, causing the stream to become corrupted and rendered unwholesome and impure and unfit for either human or animal consumption; that defendants have permitted decaying and putrid hog dung to accumulate, which is offensive and dangerous to the health of plaintiffs and their family; that unless defendants are restrained they will continue to contaminate the stream and render it unfit for use in the future. Plaintiffs allege that the present operation of said hog-feeding lot constitutes a nuisance and a health menace, and injures plaintiffs in the proper enjoyment of

their land and the stream flowing through it; that plaintiffs have no adequate remedy at law, since said nuisance is a continuing one; that by reason of the pollution of said stream and the said odors, by which the value of plaintiffs' property has been depreciated and the use thereof restricted, plaintiffs have been damaged in the sum of $5,000, and they pray for a permanent injunction.

The defendants' answer admits the ownership of the premises described in the petition, and the operation of the hog-feeding lot by defendants, and denies all other allegations of the petition. Defendants allege that the Grain Belt Supply Company is engaged in the production, manufacture and sale of anti-hog-cholera serum and hog-cholera virus, and has held a license from the United States department of agriculture for the manufacture and sale of such products since 1914; that said products are necessary for the protection of swine health; that it is necessary in the manufacture of serum and virus to have adequate supplies of pigs and hogs, which must be kept available at a point reasonably convenient to the place of manufacture; that the manufacturing establishment of Grain Belt Supply Company is located adjacent to the Union Stock Yards, Omaha; that defendants' hog lot is located on an improved highway in Sarpy county, about 3½ miles therefrom.

It is further alleged that Omaha is one of the largest live stock markets in the world; that for many years large numbers of cattle, sheep and hogs have been fed at many similar premises within a radius of 2 to 15 miles of said Union Stock Yards; that a number of similar feed lots lie along and adjacent to the stream above the premises of plaintiffs and defendants; that the feeding of large quantities of cattle, sheep and hogs at feed lots such as that of defendants is a proper and necessary part of the marketing of large quantities of live stock; that the above mentioned stockyards and the packing plants located adjacent thereto constitute a major industry in Nebraska and in that part of Sarpy county in which defendants' premises are located.

It is also alleged that at all times defendants have kept

said feed lot in a clean and sanitary manner, and in as good condition with respect to odors of live stock as is practicable in the operation of a feed lot; that defendants have regularly scraped out said feed lot with scrapers, and employed men to load the refuse upon wagons, and have hauled out each season many loads of manure and spread same upon the fields in the vicinity of said feed lot for fertilizer; that the operation of said feed lot has not depreciated the value of plaintiffs' property and does not constitute a nuisance. Defendants further allege that said feed lot is not within the corporate limits of any city, town or village; that said premises were operated as a feed lot by defendants and their predecessors in title for many years, longer than the period prescribed by the Nebraska statute of limitation relating to real estate. Wherefore, defendants pray that the petition be dismissed. No reply to this answer appears in the transcript.

On May 18, 1942, the cause having been tried, argued and submitted on briefs, the court, having viewed the premises at the request of parties, found against the plaintiffs and that their petition should be dismissed.

The plaintiffs' rely for reversal on the charge that the decision is not sustained by sufficient evidence and is contrary to law, and allege generally that there were errors of law occurring at the trial. Plaintiffs' first argument is based on the fact that the pollution of the creek running through the premises of the plaintiffs and defendants is unlawful under section 28-1013, Comp. St. 1929, which provides that it is an offense to put filthy substances into running water of which use is made for domestic purposes, and the following section provides that one shall not contaminate creeks to the annoyance of others, and shall abate the nuisance within 24 hours, and section 28-1017, Comp. St. 1929, provides that it is an offense to maintain a nuisance which gives off offensive smells and becomes injurious to health, and attention is called to section 37-516, Comp. St. 1929, that it is an offense to dump or drain refuse near any waters of the state, and that refuse is broadly defined.

The purport of these citations from our statute is to prove that the defendants were committing unlawful acts in conducting their hog-feeding operations, and while admitting that such operations have been conducted for more than ten years, and were conducted prior to the time the plaintiffs purchased the premises, still the plaintiffs insist that one cannot gain a prescriptive right to commit an unlawful act.

This court has held that cattle- and hog-feeding yards are not in themselves a nuisance, and that they become such only when improperly maintained or conducted. *Francisco v. Furry*, 82 Neb. 754, 118 N. W. 1102. The evidence in the instant case does not justify a finding that a nuisance has been created, in violation of any of these sections of the statutes.

Let us now examine the evidence in this case. The creek which flows through the yards of both plaintiffs and defendants drains over a thousand acres of land generally used for feed lots for cattle, hogs and sheep. Some of these yards at the upper end of this creek bed are dry except when hard rains come, which wash the manure into the creek, and in the hardest rains this creek has been known to become a raging torrent, 10 feet deep and 20 to 30 feet wide at the top, and in such times would carry down débris of all kinds into the Pappio, into which this creek empties, and ultimately into the Missouri River.

It may be admitted, as testified by Dr. Colien, of the department of bacteria of Creighton medical school, who made an analysis of the water in this creek, that it has coli-bacillus, which would not be allowed in public swimming pools, and would be condemned for human use. He testified that the odor of this creek is the one that one would naturally get from swampy water, not exactly putrefaction but disagreeable, and in addition there was a definite odor of fecal material.

The evidence indicates that the number of hogs usually kept in this tract by defendants is not more than ordinarily kept in such a hog lot. There is evidence that Omaha is a

great live stock market, and that the operation of the many such hog lots in this territory, which is outside of the corporate limits of any city, is not only a lawful business but is a necessary business in connection with the live stock markets of Omaha. The evidence of the defendants indicates that they feed no decayed animal matter, but feed corn, oats, tankage, soy beans, linseed meal, alfalfa meal, salt and lime. There is evidence that the defendants maintain this hog lot under conditions as clean and sanitary as can reasonably be maintained, considering the general fixed habits and characteristics of hogs.

In 1923 a case came to this court from the city of Lincoln, entitled *Mathews v. Mozer*, 111 Neb. 71, 195 N. W. 943, involving a large establishment where an extensive poultry business was carried on, and thousands of chickens, turkeys, geese, ducks and calves were slaughtered and dressed on the premises, and the trial judge made a careful inspection of the premises, as did the court in the case at bar. In that opinion it was said that the place when properly conducted should not be a nuisance, either to the public or to the plaintiff; that the odor which came to the plaintiff was occasional rather than constant; that it was not injurious to health, and not worse than many city dwellers in business sections are required to endure.

"As one man's enjoyment of property must be considered in connection with the reasonable and lawful use of other property by his neighbors, where pigs are raised under conditions as clean and sanitary as can reasonably be obtained, considering the characteristics of the animal and the necessity of confinement to close quarters, the fact that odors from those quarters are carried over the premises of the summer residence of another will not make an actionable nuisance." *Clark v. Wambold*, 165 Wis. 70, 160 N. W. 1039, L. R. A. 1917C, 211.

We fail to find in the evidence any evidence of any different damage suffered by any and all of the owners of land along this creek.

The defendants also plead estoppel, as has been men-

tioned, but since we have concluded that there was not a nuisance as determined under the law, this question is immaterial, and therefore we will not discuss it. The motion and brief filed for a rehearing are hereby overruled and denied.

This court has reached the conclusion that the trial court, which had at least twice made a careful examination of these premises, reached the correct conclusion, and the judgment of dismissal of plaintiffs' petition is hereby affirmed.

AFFIRMED.