JOHN C. VANA, JR., APPELLANT, V. THE GRAIN BELT SUPPLY COMPANY ET AL., APPELLEES.

18 N. W. 2d 669

FILED MAY 18, 1945. No. 31903.

*Fischer, Fischer & Fischer*, for appellant.

*G. M. Tunison*, for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

SIMMONS, C. J.

In this action plaintiff seeks to recover damages for permanent injuries to his health, resulting from the pollution of a stream. Defendants plead as a defense a settlement, the dismissal with prejudice of certain litigation, and favorable decisions in other litigation. Plaintiff by reply admitted the correctness of the court proceedings and the settlement agreement. The defendants moved for judgment on the pleadings. The trial court sustained the motion and dismissed the plaintiff's cause. Plaintiff appeals. We affirm the judgment of the trial court.

In this action, the defendants are the Grain Belt Supply Company, a corporation, hereinafter called the corporation; Robert W. Young, who appears to be the president of the corporation; Reuben B. Miller, who appears to be or to have been an employee of the corporation; and "Mrs. Miller", identified in the answer as Louise Miller.

This court has adopted the rule that "A motion for judgment on the pleadings requires a consideration of what may be found in all the pleadings as the ultimate facts." *McMillan v. Chadron State Bank,* 115 Neb. 767, 214 N. W. 931. See, also, *Hamaker v. Patrick,* 123 Neb. 809, 244 N. W. 420.

For an understanding of the overall factual situation, the property involved and the general controversy between the plaintiff and the corporation, reference is made, out of chronological order, to the decision in *Vana v. Grain Belt Supply Co.,* 143 Neb. 118, 8 N. W. 2d 837, and 143 Neb. 125, 10 N. W. 2d 474.

Plaintiff's amended petition herein was filed on October 27, 1943. In it he alleged ownership of and residence upon the same land as was involved in the litigation in the cited case. He alleged that defendants had operated and maintained a rendering works on their land until January 30, 1941; and that before and since September 11, 1940, they had maintained thereon a hog feeding lot. Plaintiff further

alleged that a fresh water stream ran through defendants' premises and then upon and through the land of the plaintiff; that in the operation of the rendering plant from 1935 "to the present time", defendants had caused large amounts of decaying animal matter and various kinds of refuse to be dumped, washed and drained into the stream; that this matter was teeming with actively motile bacteria and protozoan parasites; that defendants thereby had rendered the stream unwholesome, impure, and unfit for human or animal consumption, and had caused the stream to be contaminated, its banks filled with bacteria communicable to human beings directly and through animals, and dangerous to the health of human beings and animals.

Plaintiff further alleged that he was employed as a clerk in a packing company; that prior to the times mentioned in his petition, he had enjoyed robust health; that since 1935, when he moved upon his present premises, he has become increasingly ill from the effects of the organisms transmitted to him through livestock in milk and meat, as a direct result of which and due to his becoming infiltrated with bacteria of all kinds received from the pollution of the stream, he has been unable to pursue his occupation efficiently and to enjoy his former good health; that on June 9, 1941, he had a tonsillectomy and lost time from his work due to infection caused by said organisms; that on July 7, 1941, he had an appendectomy and as a result lost time from his work due to disease from the same sources; that as a further result of these infections, he has lost weight, and much of the use of his right arm, his eyesight has been impaired and he is generally debilitated; that he has been informed and believes that his system has carried an excessive amount of harmful bacteria consisting of streptococcus and bacillus colon, which cause great pain and suffering, inconvenience and weakness; and that as a direct result of such pollution of the stream and infections resulting therefrom, his life has been endangered, he will be permanently injured and his health will be permanently impaired, all to his damage in the amount of $50,000, for which he prays judgment.

The only allegations of the answer of defendants which need be set out here are those having to do with the prior litigation and settlement. Plaintiff, by reply, admitted the correctness of the pleadings and judgments set out in the answer. These matters accordingly are recited in their chronological order.

On April 25, 1940, the county attorney of Sarpy county filed a petition in the name of the state in the district court for Sarpy county. The defendants named therein included the corporation, Young and Mr. Miller. In that action an injunction was sought against the operation of the rendering works on the ground that it was making the stream and air unwholesome and impure, and constituted a nuisance. Issues were made, trial had, and on September 11, 1940, decree was entered enjoining the defendants from operating the rendering plant in its then condition, and the injunction was to continue until the nuisance was abated. Defendants prosecuted an appeal to this court.

On October 5, 1940, the plaintiff filed an action in the district court for Douglas county against the corporation, Young and Miller. In this action there was a second plaintiff, Rose M. Vana, identified in the record as the wife of plaintiff. Plaintiffs alleged the operation and maintenance of the rendering plant and hog feeding lot, the offensive odors injurious to their health and property, the pollution of the stream for many years, the accumulation of refuse filled with maggots and bacteria to such an extent that the contamination would continue for some time, even though the nuisance be abated, permanent damage to their property, and illness of plaintiffs and their family because of the odors. They prayed for the recovery of damages.

Thereafter on November 30, 1940, a written agreement was entered into between the two Vanas as parties of the first part, and the corporation, Young and Miller as parties of the second part. This agreement recited the ownership of the two tracts of land, the operation of the rendering works and hog feeding lot by the corporation, the pendency of the damage action, and the desire of the corporation to

secure its dismissal with prejudice, and the desire of the parties to settle all matters of controversy, including the damage action. It further stated that the Vanas had no objection to the operation of the feed lot on the premises, but desired the discontinuance of the operation of the rendering works. It was agreed that the second parties within 60 days would cease and discontinue the operation of the rendering works, and thereafter would not operate and maintain any rendering works on the premises; that upon the discontinuance of the rendering works, the Vanas would dismiss the damage action with prejudice; that the second parties reserved the right to continue the operation of the hog feeding lot and lot for feeding other cattle; and that " * * * first parties agree to save second parties harmless from any and all claims for damages or rights and causes of action on the part of them, the first parties, of whatsoever kind and nature arising from or out of the operation of said premises, by second parties, as a feeding lot to date hereof." And "It is the intention and agreement of the parties that upon the second parties discontinuing and ceasing to operate the rendering works above-mentioned on said premises first parties acknowledge full receipt, discharge and satisfaction of all damages for all matters and things alleged in said petition, or other claims by them, against second parties, on account of the operation of said rendering works and hog feeding lot up to the date hereof and consent that said premises may continue to be operated as a feeding lot in the future."

Thereafter, by stipulation the damage action was dismissed with prejudice on January 24, 1941, the appeal in the injunction action was dismissed in this court, and that cause dismissed in the district court.

On April 8, 1941, plaintiffs filed a petition in the district court to set aside the dismissal of the damage action. A demurrer to this petition was sustained and the cause dismissed.

On September 5, 1941, the Vanas filed a petition in the district court for Sarpy county against the corporation,

Young and Miller.. In this action they alleged the existence of offensive odors which were injurious and dangerous to the plaintiffs' health, and the pollution of the stream resulting from the feeding of hogs thereon since November 30, 1940, which, if not restrained, would continue to pollute the stream. They further alleged that the present operation of the hog feeding lot was a nuisance and health menace; and that by reason of the pollution of the stream and the odors, the value of plaintiffs' property had been depreciated and its use restricted. Plaintiffs prayed for a permanent injunction and for judgment in the amount of $5,000. Issues were made and trial had, resulting on May 18, 1942, in a judgment of dismissal of plaintiffs' petition. On appeal the judgment was affirmed by this court in *Vana v. Grain Belt Supply Co., supra*, on July 13, 1943.

On July 7, 1942, plaintiff and Rose M. Vana filed another suit in the district court for Sarpy county against the corporation, Young and Miller, alleging the digging of ditches by defendants from the hog lots to the creek, the existence of the refuse matter, its dumping into the stream, and the violation of the statutes. An injunction was sought. Issues were made and trial had, resulting in a dismissal of plaintiffs' petition.

On July 24, 1941, Rose Vana filed a complaint against Miller charging him with putting animal substance in the creek in violation of statute. Trial was had resulting in a verdict of not guilty.

In this action the trial court sustained defendants' motion for judgment on the pleadings and dismissed the plaintiff's petition.· The question here is whether or not that decision was correct.

Plaintiff advances the propositions that the feeding lot is a continuing nuisance, constantly creating new causes of action; that in order to constitute a bar by a former adjudication, it must be in an action between the same parties and upon the same subject matter; and that a judgment of dismissal in a criminal action cannot be given in evidence in a purely civil action to establish the truth of the facts upon which it is rendered.

Defendants advance the propositions that there was an estoppel by deed, referring to the agreement of November 30, 1940; that the issue here presented has been adjudicated in the former actions; and that a motion for judgment on the pleadings is a proper procedure.

Plaintiff on November 30, 1940, had a damage action pending against the corporation, Young and Miller. He then entered into the contract hereinbefore set out.

What was the effect of this contract? Defendants agreed to discontinue the operation of the rendering works. Plaintiff pleads in this action that they did so. Plaintiff consented that the defendants could continue the operation of the feed lot. That consent of necessity was that the defendants could continue the operation of the feed lot as it was then carried on with its pollution of the stream and its noxious and offensive odors. Plaintiff could not thereafter require that it be abated, if operated as it was then being operated. The nuisance, if the feeding lot be one, was to continue, and become a permanent one so far as these parties were concerned. Plaintiff acknowledged satisfaction of all claims for damage then existing. Can he thereafter claim additional damages arising as a result of the doing of the things to which he consented? We do not think so.

The applicable rule has been clearly stated by the Supreme Court of Arizona in the recent case of *City of Phoenix v. Johnson*, 51 Ariz. 115, 75 Pac. 2d 30, as follows: "Whether a party injured has only one or several rights of action for the maintenance of a nuisance, whether public or private, depends upon whether the nuisance is a permanent, or what is called a continuing one. If the nuisance be permanent in its nature, there is but one cause of action, and when that has been determined, the rights of the party claiming to be injured by the nuisance are settled once and for all. If however, the nuisance is of a continuing nature, successive actions may be maintained for the damages occurring from time to time."

The rule is stated in 1 Sedgwick, Damages (9th ed.), sec. 95, p. 159, as follows: "If the injury is caused by erecting

a structure or making a use of land which the defendant has a right to continue, the injury is regarded as committed once for all, and action must be brought to recover the entire damages, past and future."

See, also, *Omaha & R. V. R. R. Co. v. Standen,* 22 Neb. 343, 35 N. W. 183; *Omaha & R. V. R. Co. v. Moschel,* 38 Neb. 281, 56 N. W. 875; *Beatrice Gas Co. v. Thomas,* 41 Neb. 662, 59 N. W. 925; *Webb v. Virginia-Carolina Chemical Co.,* 170 N. C. 662, 87 S. E. 633; *Worley v. Mathieson Alkali Works,* 119 Va. 862, 89 S. E. 880; *Risher v. Acken Coal Co.,* 147 Ia. 459, 124 N. W. 764; *Irvine v. City of Oelwein,* 170 Ia. 653, 150 N. W. 674; 46 C. J., secs. 443, 444, 446, pp. 802, 803, 804, 805; 27 A. L. R. 61.

The rule is stated by the Supreme Court of Kansas in *Kansas Pacific Railway v. Mihlman,* 17 Kan. 224. "But the principle upon which one is charged as a continuing wrongdoer is, that he has a legal right, and is under a legal duty, to terminate the cause of the injury." Or, as stated in *City of Kansas City v. Frohwerk,* 10 Kan. App. 120, 62 Pac. 432: " * * * in order to charge one as a continuing wrongdoer he must have a legal right and be under a legal duty to terminate the cause of injury." The rule is discussed in *Bartlett v. Grasselli Chemical Co.,* 92 W. Va. 445, 115 S. E. 451, 27 A. L. R. 54, wherein it is pointed out that repeated recovery of damages is a means of coercion to abatement by the wrongdoer himself. This rule is also discussed in L. R. A. 1916E 1032 to 1040.

Here, so far as this plaintiff is concerned, the defendants are under no legal duty to terminate the cause of the injury, on the contrary, they have a contractual right to continue the operation of the feeding lot. We conclude that when the plaintiff settled all claims for damages to the date of the contract and agreed that the nuisance, if any, which existed in the operation of the feed lot might continue indefinitely, by that agreement and settlement he also settled once and for all any claim for future damages arising from the operation of the feed lot in its then state.

This conclusion makes unnecessary the determination of the plea of *res adjudicata.*

The judgment of the trial court is affirmed.

AFFIRMED.